2007 ND 126

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Alexander VANTREECE, Defendant and Appellant.**

No. 20060139.

Supreme Court of North Dakota.

July 25, 2007.

Leah Jo Viste, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Dennis D. Fisher, Fargo, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Alexander Vantreece appealed from a criminal judgment entered upon a jury verdict finding him guilty of gross sexual imposition under N.D.C.C. § 12.1–20–03(1)(a). We hold there is not substantial evidence upon which a jury could reasonably find Vantreece compelled the complainant to submit to a sexual act by force, and we reverse the criminal judgment and remand for entry of judgment of acquittal.

I

[¶ 2] The charges against Vantreece stem from an incident which occurred at the Fargo apartment of Zelandra Vantreece, the defendant's ex-spouse. Their young son lives in the apartment with Zelandra. The complainant, Zelandra's sister-in-law, was visiting her. At the time of the incident, the complainant was 27 years old, married, and the mother of two young children, including a 17–month–old infant who accompanied her on this visit.

[¶ 3] On the morning of August 15, 2005, Zelandra, knowing the complainant had not had much sleep the previous night because she was tending to her infant child, took her son and the complainant's baby with her to run errands so the complainant could rest. After Zelandra left

with the children, the complainant went into the son's room and lay down on a foldout bed. The complainant was having "trouble falling asleep" when Vantreece came into the room. He and the complainant knew each other. The complainant testified that, just as she had on prior occasions, she let Vantreece try to put her to sleep "[b]y laying down beside me and rocking me." After rocking her, Vantreece left the room for a few minutes and then returned. Although the complainant had not fallen asleep, she pretended to be asleep. Vantreece again lay down beside her. The complainant was lying on her side facing one direction and Vantreece was lying behind her, facing the same direction. The complainant testified:

Q (Mr. Boening continuing) After he came back into the room, what happened?

A He cut a hole in the pajamas that I was wearing.

Q Okay. Do you remember how you were dressed when you were trying to sleep?

A Yeah. Plaid pants with a pink shirt, I believe.

Q Do you remember how he made the hole in your pants?

A No, I couldn't see. I was pretending to be asleep.

The complainant did not say anything to the defendant. She testified that Vantreece tried to insert his penis into her vagina but was unable to do so. He then left the room again and returned a few minutes later. She continued to pretend she was asleep. When he returned to the room the second time, he again lay on the bed with her, and he pulled her pants "down a little." She testified he again tried to penetrate her but was not successful. He then left the room a third time. When he came back a "few seconds later," he again lay down by her. The complainant testified Vantreece was then successful in penetrating her vagina with his penis which "seemed like it was lubricated." She testified Vantreece used tissues to wipe her off, pulled her pants back up, and left the room.

[¶ 4] The complainant continued to pretend she was asleep and did not leave the room "for a few minutes afterwards" so the defendant "wouldn't know that I was awake." After 15 minutes or so, she went outside to have a cigarette, where she was joined by Vantreece. While they were smoking, Vantreece told her that Zelandra wanted her to take a shower before Zelandra returned home. The complainant testified that she then "went in and washed my hair," but she did not wash any other part of her body, so that she would not "wash away all the evidence." When Zelandra returned, the complainant told her what had happened. Zelandra then drove her to a hospital, where she was examined and an emergency room nurse "took a number of swabs" to gather DNA and other evidence.

[¶ 5] After an investigation was conducted by the Fargo Police Department, Vantreece was initially charged with committing gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(1)(e), a class A felony, for engaging in a sexual act with a person who suffers from a mental disease or defect rendering her incapable of understanding the nature of her conduct. The information was later amended to charge Vantreece under N.D.C.C. § 12.1–20–03(1)(a):

[T]he above-named defendant engaged in a sexual act with another, or caused another to engage in a sexual act, when the defendant compelled the victim to submit by force, namely, physical action, to-wit. . . . The defendant . . . ripped open a hole in the crotch of [the complainant's] pants . . . tried to put his

penis in her vagina, pulled off her pants, touched her vaginal area and then engaged in a sex act with [the complainant].

[¶ 6] Vantreece was tried by jury, which returned a verdict of guilty. A criminal judgment was entered convicting Vantreece of "class A" felony gross sexual imposition. The court sentenced Vantreece to incarceration for 17 years, to serve a period of imprisonment of 12 years and the balance of five years suspended for a period of five years, commencing after the period of incarceration.

[¶ 7] A charge under N.D.C.C. § 12.1–20–03(1)(a) is designated a class AA felony, under N.D.C.C. § 12.1–20–03(3)(a). It appears the prosecutor improperly designated the charge as a class A felony instead of a class AA felony. However, in view of our reversal of the conviction, this mistake is without consequence.

## II

[¶ 8] On appeal, Vantreece has designated a single issue:

Whether the evidence supports the criminal judgment and commitment for gross sexual imposition based upon the use of force when there was no force used.

However, in his appellate brief, Vantreece argues the sufficiency of the evidence issue "is bound up with prosecutorial overreaching," because the prosecutor "made repeated suggestions that the alleged victim's mental disease or defect was the key element of its proof."

[¶ 9] During opening statements, the prosecutor asserted "defendant took advantage of a ... developmentally disabled person." Vantreece's defense attorney at the trial responded in his opening statement that "I do believe that the testimony [is] going to show that [the complainant] has a developmental disability." During closing argument the prosecutor told the jury:

This is a crime of opportunity. Alexander Vantreece knew that [the complainant] was a vulnerable adult. He knew he could take advantage of her, and he did just that. [The complainant] is a woman. She has a woman's body. However, she does not have a woman's ability to protect herself. She does not have the mind of an adult woman. Hers comes from her experience and her disability.

[¶ 10] In *State v. Evans,* 1999 ND 70, ¶ 11, 593 N.W.2d 336, this Court explained the standard upon which we review an issue of improper argument by a prosecutor:

"The control of closing arguments is largely within the discretion of the trial court, and we will not reverse on the ground that a prosecutor exceeded the scope of permissible closing argument unless a clear abuse of the trial court's discretion is shown." *State v. Ash,* 526 N.W.2d 473, 481 (N.D.1995). To establish a trial court abused its discretion with regard to a prosecutor's argument, a defendant must establish the argument was improper and prejudicial. *State v. Schimmel,* 409 N.W.2d 335, 342 (N.D.1987). "To be prejudicial, absent a fundamental error, improper closing argument by the state's attorney must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Id.* "A state's attorney's statements of fact to the jury which are not warranted by the evidence are improper and such statements are presumed to be prejudicial unless harmless in themselves."

*State v. Mehralian,* 301 N.W.2d 409, 418 (N.D.1981).

[¶ 11] The record in this case contains evidence that the defendant was aware the complainant had mental limitations. Jim LeDoux, a detective with the Fargo Police Department, testified that Vantreece told officers he knew the complainant is a vulnerable adult and that she has the education of an eighth grader. However, Vantreece asserts the prosecutor's argument relating to the complainant's mental capabilities is prejudicial and irrelevant, because he was not charged under N.D.C.C. § 12.1–20–03(1)(e), for engaging in a sexual act with a person who suffers from a mental disease or defect, but under N.D.C.C. § 12.1–20–03(1)(a), for engaging in a sex act by force. Vantreece correctly asserts that the prosecutor had the burden to prove the victim was compelled to submit by force. However, his argument fails to recognize that a complainant's mental capacity is relevant in a charge of having sex by force to the question of the extent of force required to compel the victim to submit. *See People v. Kline,* 197 Mich. App. 165, 494 N.W.2d 756, 758 (1992) (evidence of a complainant's mental capacity relevant to show complainant may have had a diminished capacity to consent and to show that such diminished capacity may have made her more susceptible to the defendant's coercion); *Barnett v. State,* 820 S.W.2d 240, 242 (Tex.Ct.App.1991) (a victim's diminished mental capacity, along with all other evidence, can be considered by the jury in determining sufficiency of the evidence on the issue of physical force and consent); *State v. Hawkins,* 778 S.W.2d 780, 782 (Mo.Ct.App.1989) (evidence of complainant's mental capacity is relevant to show whether she consented to sex with defendant charged with forcible rape).

[¶ 12] We conclude the prosecutor's argument in this case was neither improper nor prejudicial. Statements relating to the complainant's diminished mental capacity were supported by record evidence. That evidence was relevant to the issue of the amount of force which was required by the defendant to compel this victim to submit to engaging in a sexual act with him.

### III

[¶ 13] The primary issue raised by Vantreece on appeal is whether there is sufficient evidence of force to convict him of the charge brought against him. The prosecution charged that Vantreece compelled the complainant to submit by force to engage in a sexual act with him in violation of N.D.C.C. § 12.1–20–03(1)(a) which provides:

1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

a. That person compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnaping, to be inflicted on any human being.

The information charged that Vantreece "ripped open a hole in the crotch of [the complainant's] pants ... tried to put his penis in her vagina, pulled off her pants, touched her vaginal area and then engaged in a sex act" with her.

[¶ 14] In reviewing a sufficiency of the evidence challenge, we review the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the essential elements of the crime were established beyond a reasonable doubt. *State v. Keller,* 2005 ND 86, ¶ 50, 695 N.W.2d 703. A reversal is warranted only if, after viewing the evidence and all reasonable eviden-

tiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* We do not weigh conflicting evidence nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982).

[¶ 15] The trial court instructed the jury on the elements of the offense:

The State's burden of proof is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements:

1) That on or about the 15th day of August, 2005, in Cass County, North Dakota, the Defendant, Alexander Vantreece, willfully engaged in a sexual act with [the complainant]; and

2) The Defendant did so by willfully compelling [the complainant] to submit by force.

The prosecution had the burden to introduce substantial evidence for the jury to find the use of force by the defendant sufficient to overcome resistance. *State v. Joern*, 249 N.W.2d 921, 922 (N.D.1977). The use of the word "compels" under the statute negates consent, as does the requirement that the use of force must be found by the jury. *Id.* at 922–23.

[¶ 16] As we have previously stated, our criminal code is modeled on the proposed Federal Criminal Code, which relies heavily on the Model Penal Code. *See State v. Brown*, 420 N.W.2d 5, 6 (N.D. 1988). The commentary by the drafters of the Model Penal Code § 207.4(1)(a) (Tentative Draft No. 4 1953), which contains language substantively identical to the crime charged in this case, is instructive. That commentary states:

The situations covered by paragraph (a) of subsection (1) are the classic rape cases, where the woman is overpowered by violence or the threat of it. Sometimes, in order to make it perfectly clear that a token initial resistance is not enough, existing law specifies that the woman must resist "to the utmost." We believe that the text requirement that she be "compelled to submit" is adequate for this purpose.

*Id.* at 246.

[¶ 17] The commentary to the final draft of the Model Penal Code § 213.1(1)(a) (1962), which section also contains substantively identical language to the criminal statute under which Vantreece was charged, is also instructive regarding the proof required to convict:

The primary problem in determining how the elements of rape should be stated concerns the method by which the imposition by the male or the lack of consent by the female should be described.... There is considerable difficulty, however, in determining how the elements of force or threat should be defined. As has been stated elsewhere, rape "is the only form of violent criminal assault in which the physical act accomplished by the offender ... is an act which may, under other circumstances, be desirable to the victim." This unique feature of the offense necessitates the drawing of a line between forcible rape on the one hand and reluctant submission on the other, between true aggression and desired intimacy....

As will be elaborated below, the effort in Subsection (1)(a) is to meet these difficulties in the most serious form of rape by focusing upon objective manifestations of aggression by the actor. Accordingly, the offense is defined to occur when the actor "compels" the victim "to

submit by force or by threat" of certain specified serious harms. . . .

With respect to grading, the Model Code is drafted on the premise that three major factors should control: the culpability and dangerousness manifested by the actor; the presence or absence of factors objectively verifying these conditions in the actor; and the degree of harm inflicted upon the victim. . . .

Subsection (1)(a) of Section 213.1 punishes forcible rape. The definition of the offense is stated not in terms of the victim's lack of consent but of the actor's use of force that "compels her to submit" to intercourse. . . .

As a practical matter, juries may require resistance to show that the male compelled her to submit, but there is little reason to encase this generalization in a rule of law. Where the proof establishes that the actor did compel submission to intercourse by force, the failure of a weak or fearful victim to display "utmost" or even "earnest" resistence should not be exculpatory.

. . . .

By focusing upon the actor who "compels" the victim "to submit to force" and by omitting express language of consent and resistance, the Model Code casts away encrusted precedents and strikes a fresh approach. This is not to say that consent by the victim is irrelevant or that inquiry into the level of resistence by the victim cannot or should not be made. Compulsion plainly implies nonconsent, just as resistance is evidence of non-consent. By the same token, the lack of resistance on a particular occasion will not preclude a conviction of rape if the jury can be convinced by the context and the degree of force employed by the actor that the submission was by compulsion.

Model Penal Code and Commentaries, Part II, § 213.1 cmt. at 279–280, 304–307.

[¶ 18] As the commentary clarifies, the crimes to which this statutory language applies are "classic rape cases" wherein a woman is overpowered by violence or threat of violence. The serious nature of these criminal acts is underscored by the legislature classifying them as class AA felonies, carrying a potential sentence of life imprisonment without parole. N.D.C.C. §§ 12.1–20–03(3)(a) and 12.1–32–01(1). Our legislature has defined force to mean "physical action." N.D.C.C. § 12.1–01–04(11). It is the force or physical action by the defendant which must "compel" the victim to "submit" to a sex act for a crime to be committed under N.D.C.C. § 12.1–20–03(1)(a).

[¶ 19] The complainant in this case testified about her past experience and its effect on her psyche. She was sexually molested by a stepfather at age 14 or 15. At age 18 she quit school and lived with friends of her mother for four years. She testified that during this period she was sexually molested by "the lady's husband" on a "daily basis." She testified that she would pretend to be asleep so this man would not have sex with her. She said that on "numerous occasions" she would try to tell him no, and the last time she said "no" he "picked me up by the throat and threw me on a bed and told me, 'don't ever tell me that again or you'll regret it.'" After living four years with that family, she left one day on her own and went to the Salvation Army. She moved to Texas and had her first child with a man she met there. She later met her current husband, with whom she had her second child.

[¶ 20] The complainant was acquainted with the defendant. She testified that on prior occasions "[h]e tried to put me to sleep ... [b]y laying down beside me and rocking me." She consented to have the

defendant lay beside her and rock her in his arms on August 15, 2005. He then left the room, and when he returned he lay down beside her and tore a small hole in the crotch of her pants to have intercourse with her.

[¶ 21] The complainant testified that when Vantreece attempted to have sex with her she pretended to be asleep because "[i]t was much safer that way." She testified that she never asked him to stop and she did not attempt to resist or flee from the situation. On cross-examination she further testified:

Q Now, at any point did Alex hold you down and make you—

A No.

Q —do this with him?

A No. 'Cause he didn't need to. I was sleeping. Or he thought I was—

Q Or pretending to be asleep?

A Yeah. So he didn't need to hold me down.

Q He never forced you to—to lay there?

A No. I chose to lay there because I was scared to say anything.

. . . .

Q He didn't threaten you in any way? Like you mentioned that Al had threatened you the one time. Alex never did threaten you this day, did he?

A No. I was sleeping. He couldn't have threatened me. He didn't know I was awake, so he didn't say nothing.

Q He didn't hold your hands back, anything like that?

A No. I was sleeping.

Q Well, you were pretending to be sleeping?

A Yeah.

To convict, the State had to show Vantreece exerted force upon the complainant which compelled her to submit to having sex with him. In the absence of force or threats of death or serious bodily injury, there was no crime under N.D.C.C. § 12.1–20–03(1)(a). It was not sufficient to prove Vantreece committed this crime with evidence that the complainant acquiesced in a sexual act with him because she "learned from the past" to acquiesce in sexual advances without protest or resistance of any kind.

[¶ 22] The record evidence in the case is entirely devoid of any showing that Vantreece exerted physical action or force against the complainant which compelled her to submit to having sex with him. After Vantreece opened a hole in her pajama, he left the room twice before he eventually had sex with her. Evidence of the tearing of the pajama is not adequate under these circumstances to demonstrate force sufficient to compel the complainant to submit to having sex with the defendant.

[¶ 23] In a case with factual similarities, the Texas Court of Appeals in *Jiminez v. State*, 727 S.W.2d 789, 792 (Tex.Ct. App.1987), reversed a conviction of sexual assault. The complainant was a 21–year–old university student, who went to the campus in the early morning hours to meet her boyfriend. She did not find him, but she consumed some wine and then fell asleep on the floor in a music building. Her first awareness was of someone in the unlighted room with her who had his hand on her vaginal area outside of her clothing. She eventually recognized that her assailant was a university police officer. She did not protest, but pretended to be asleep. He continued to enter and leave the room several times, and he eventually moved her underwear aside and inserted his finger inside her vagina. He then attempted to have intercourse with her. At that point, she coughed loudly to make him think she was awaking. He immediately

ran from the room. The alleged attacker was ultimately charged with sexual assault by compelling the complainant to submit by the use of physical force or violence. A jury found him guilty, but the Texas Court of Appeals reversed the conviction, concluding there was insufficient evidence to sustain the verdict:

> The undisputed evidence shows that the complainant pretended to be asleep throughout the episode; that there was no communication whatsoever between her and her attacker; and that the attacker fled at the first sign that the complainant was not unconscious or unaware that the assault was occurring. We find no evidence in the record that appellant intentionally or knowingly used or threatened to use force or violence.
>
> We recognize that it is natural and reasonable for one who is involuntarily confronted with distasteful options to select the one that is the least distasteful, and we emphasize that the evidence herein is not insufficient because the victim did not resist. A victim is not required to resist, and it may be wise not to do so.... The fatal defect in this case is not the absence of resistance, but the absence of the threat or use of force or violence.

*Id.* at 792.

[¶ 24] Similar to the facts in *Jiminez*, there is no record evidence to show Vantreece used physical force or threats to compel the complainant to submit to having sex with him.

[¶ 25] In another case with factual similarities, the Supreme Court of Michigan in *People v. Patterson*, 428 Mich. 502, 410 N.W.2d 733, 734 (1987), reversed a sexual assault conviction for insufficient evidence on the elements of force or coercion. The complainant, a 17–year–old high school student, testified that while sleeping at home alone one night she was awakened by the feel of a hand on her genital area outside her underwear. She *called out*, "[w]ho is it?" No one answered, and she reached up and felt a face "with scratchy hair and stubble on it." She then rolled over in the bed, turned on the light, and, staring at the man squatting beside her, told him to get out of the house. The defendant immediately turned around and left the room. He was later apprehended and charged with fourth-degree criminal sexual conduct for having sexual contact with the complainant by force or coercion. The jury found the defendant guilty, but the Michigan Supreme Court reversed the conviction:

> [T]here was insufficient evidence of the element of force and coercion as required under the fourth-degree criminal sexual conduct statute.... The Legislature specifically required force or coercion to convict a defendant of fourth-degree criminal sexual conduct where the defendant is charged as this defendant was charged in the information. If the Legislature had wanted to make all unconsented-to sexual contact punishable, with or without force, it should have said so....
>
> [W]e decline to expand the definition of force or coercion to include the defendant's conduct in this case.
>
> In this case, the defendant had accomplished the unconsented-to touching before the complainant woke up. The complainant reached over to turn on the light and the hand left her body.
>
> The Legislature specifically provided under subsection (1)(b) that sexual contact with a person who is physically helpless, i.e., asleep, is a crime.... Therefore, the Legislature intended to treat sexual assaults accomplished by force or coercion separately from as-

saults on physically or mentally incapacitated victims.

If this Court was to interpret defendant's conduct in this case to be included within the provisions of subsection (1)(a) of the fourth-degree criminal sexual conduct statute, this would render the language of subsection (1)(b) of the statute a nullity.

*Id.* at 743.

[¶ 26] While the complainant in this case, unlike the complainant in *Patterson,* was not sleeping, she was pretending to be sleeping. The complainant candidly testified that Vantreece did not utter any threats and did not exert any force to hold her down or to restrain her from moving or fleeing. Her testimony shows that although Vantreece had sex with her, it was accomplished without resort to force or threats to compel her submission.

[¶ 27] The State did not charge Vantreece with class B misdemeanor sexual assault under N.D.C.C. § 12.1–20–07(1)(a), which makes it an offense to have sexual contact with another person when the perpetrator "knows or has reasonable cause to believe that the contact is offensive to the other person." Nor did the State charge Vantreece under N.D.C.C. § 12.1–20–03.1(a)(c), for engaging in a sexual act with a person when the perpetrator "knows that the victim is unaware that a sexual act is being committed upon him or her." *See Jiminez v. State,* 727 S.W.2d 789, 792–93 (Tex.Ct.App.1987). In its discretion, the prosecution charged Vantreece under N.D.C.C. § 12.1–20–03(1)(a). Its burden thereunder was to prove Vantreece by force compelled the complainant to submit to engaging in a sex act with him. While the defendant's conduct may have been reprehensible and he may have willfully taken advantage of someone he knew was "vulnerable," there is not substantial evidence upon which a reasonable factfinder could conclude the complainant was compelled to submit to a sexual act by force or threat.

## IV

[¶ 28] We hold there is not substantial evidence upon which the jury could reasonably find that Vantreece compelled the complainant to submit to a sexual act with him in violation of N.D.C.C. § 12.1–20–03(1)(a). We, therefore, reverse the criminal judgment and remand for entry of judgment of acquittal.

[¶ 29] DALE V. SANDSTROM, J., concur.

CROTHERS, Justice, concurring.

[¶ 30] The legislature has comprehensively defined and provided for punishment of sex offenses in N.D.C.C. ch. 12.1–20. This Court's "function in construing the statutes is to harmonize and reconcile the various sections within the same chapter whenever possible rather than develop inconsistencies or incongruities." *Reliance Ins. Co. v. Public Serv. Comm'n,* 250 N.W.2d 918, 922 (N.D.1977). Reading the provisions of Chapter 12.1–20 in harmony leads me to the same conclusion reached by the majority.

[¶ 31] Section 12.1–20–03, N.D.C.C., addresses gross sexual imposition and makes certain sexual acts and sexual contact unlawful, and increases punishment based on the degree of violence threatened or realized, or upon the difference in age of the actor and the defendant. This case only relates to the degree of violence, and I limit my discussion of the statutes accordingly.

[¶ 32] Section 12.1–20–03(1)(c), N.D.C.C., punishes conduct as a class A felony if the perpetrator "knows that the victim is unaware that a sexual act is being committed upon him or her." A class A

felony carries a maximum punishment of 20 years imprisonment and up to a $10,000 fine. N.D.C.C. § 12.1–32–01(2). Under subsection (1)(a) the crime is punished as a class AA felony if the sexual act was performed by a person who "compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being." All sexual crimes listed in section 12.1–20–03 become class AA felonies if the victim suffers serious bodily injuries or dies as a result of the sexual assault. N.D.C.C. § 12.1–20–03(3)(a) and (4). A class AA felony is punishable by up to life imprisonment without parole. N.D.C.C. § 12.1–32–01(1). Therefore, the same sexual conduct is punished differently—more severely—if the act is accompanied by the threat or use of violence.

[¶ 33] Section 12.1–20–04, N.D.C.C., addresses sexual imposition and punishes sexual acts or contact as a class B felony if the actor "[c]ompels the other person to submit by any threat that would render a person of reasonable firmness incapable of resisting...." A class B felony is punishable by a maximum penalty of 10 years imprisonment and up to a $10,000 fine. N.D.C.C. § 12.1–32–01(3).

[¶ 34] Section 12.1–20–07, N.D.C.C., addresses sexual assault. Under section 12.1–20–07 the prohibited conduct is no longer accompanied by "force" or "threat." Focus instead shifts to whether the sexual contact is "offensive." Punishment becomes a class C felony or a class A or B misdemeanor. A class C felony is punishable by 5 years in prison and a $5,000 fine. N.D.C.C. § 12.1–32–01(4). A class A misdemeanor carries a maximum punishment of 1-year imprisonment and a $2,000 fine, and a class B misdemeanor can be punished by up to 30 days imprisonment and a $1,000 fine. N.D.C.C. § 12.1–32–01(5) and (6).

[¶ 35] All of the crimes described above involve offensive sexual contact. For purposes of our inquiry in this case, what separates one offense from the other is the actual or threatened violence that accompanies the improper sexual contact. Reading these sections together, as we must, makes apparent that section 12.1–20–03(1)(a), which is the subsection at issue in this case, carries an enhanced sentence of life in prison without parole if the State proves the sexual act or contact was accomplished by force that compelled the victim to submit. The "force" that must be proven is not "physical action" standing alone, as suggested by the dissent. Some "force," meaning some "physical action," would be present in any sexual act or sexual contact committed in violation of any of the three statutes cited above. We therefore need to look at what sets apart conduct proscribed in one statute from the conduct proscribed in the other statutes. Under North Dakota's statutory scheme for sexual offenses, the answer is the nature of the sexual contact, along with the actual or threatened violence that accompanied the contact.

[¶ 36] Using the degree of punishment as a measuring device, N.D.C.C. ch. 12.1–20 establishes that compelling a victim to submit by force is a more serious crime than are sexual assaults where—by diminishing punishments—the actor engages in a sexual act after drugging the victim (class A felony), the actor engages in a sexual act and the victim was unaware a sexual act was being committed on them (class A felony), the perpetrator used threat to overcome the will of a reasonable person (class B felony), or the actor's conduct was offensive (class C felony or misdemeanor).

[¶ 37] Because of the framework given to us in N.D.C.C. ch. 12.1–20, for sexual conduct to be punished as a AA felony

"force" must be more than what would be punishable as a misdemeanor or a class C, B, or A felony. To constitute a class AA felony, the "force" must be that which "compels the victim to submit" to the sexual act. Here, it was charged in the information and proven at trial that Vantreece "ripped open a hole in the crotch of [the complainant's] pants ..., tried to put his penis in her vagina, pulled off her pants, touched her vaginal area and then engaged in a sex act" with her. As despicable as Vantreece's conduct was, the facts in this record do not provide sufficient evidence upon which the jury could have found Vantreece's conduct forced the victim to submit to the sexual assault. The "force" proven at trial therefore was not sufficient to support finding Vantreece guilty of the class AA felony with which he was charged. To conclude otherwise would nullify the legislative effort in N.D.C.C. ch. 12.1–20 to increase punishment according to the violence that accompanied the sexual assault. I therefore concur in the result reached by the majority.

[¶ 38]   DANIEL J. CROTHERS, J.

KAPSNER, Justice, dissenting.

[¶ 39] I respectfully dissent. A rational factfinder could conclude the force incident to the nonconsensual sexual penetration is sufficient under the gross sexual imposition statute. I would affirm the district court's judgment entered upon a guilty verdict.

[¶ 40] The essential issue raised by Vantreece on appeal is whether there is sufficient evidence of "force" to convict him of gross sexual imposition under N.D.C.C. § 12.1–20–03(1)(a), which provides:

1. A person who engages in a sexual act with another ... is guilty of an offense if:

   a. That person compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.

"Force" is defined as "physical action." N.D.C.C. § 12.1–01–04(11). Section 12.1–20–03(1)(a), N.D.C.C., is a statute of several alternatives. The State need not show any threat of death or serious bodily injury. The State needs to prove only force by "physical action." The information in this case claimed Vantreece "ripped open a hole in the crotch of [the complainant's] pants ..., tried to put his penis in her vagina, pulled off her pants, touched her vaginal area and then engaged in a sex act" with her.

[¶ 41] Under our standard of review for insufficiency of the evidence claims, this Court should uphold the jury verdict. The standard of review is well settled:

When we review a challenge to the sufficiency of the evidence, we only consider the evidence and reasonable inferences most favorable to the verdict to determine if there is sufficient evidence to warrant a conviction. *State v. Bertram*, 2006 ND 10, ¶ 5, 708 N.W.2d 913. "'A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819). We do not weigh conflicting evidence or judge witness credibility. *Bertram*, at ¶ 5.

*State v. Zahn*, 2007 ND 2, ¶ 13, 725 N.W.2d 894 (quoting *State v. Buchholz*, 2006 ND 227, ¶ 20, 723 N.W.2d 534). After reviewing the evidence in the light most favorable to the prosecution and giv-

ing the prosecution the benefit of all inferences reasonably to be drawn in its favor, a rational factfinder could have concluded Vantreece's physical actions—tearing a hole in the complainant's sleepwear, lubricating himself, forcing himself onto a woman whom he thought was asleep, and having nonconsensual sexual intercourse with her—met the legal requirements of N.D.C.C. § 12.1–20–03(1)(a).

[¶ 42] Although the majority relies on two cases which it describes as factually similar, neither is of much assistance or persuasion in deciding this case because of the legal dissimilarities between the applicable law under which they were decided and our law.

[¶ 43] In *Jiminez v. State*, 727 S.W.2d 789, 790 (Tex.Ct.App.1987), in which the conviction for sexual assault was reversed, the opinion makes no mention of a statutory definition of force. The court held it could "find no evidence in the record that appellant intentionally or knowingly used or threatened to use force or violence." *Id.* at 792. In so holding, the court relied, not on its statutes, but on prior case law. *Id.* "The cases cited by the State do not allow this case to be affirmed because each involved express threats, the use of weapons, or both." *Id.* By contrast, the jury in this case was instructed on the statutory definition of "force" in the North Dakota Century Code, which it appropriately applied and which the majority opinion appears to ignore.

[¶ 44] Even more problematic is reliance on *People v. Patterson*, 428 Mich. 502, 410 N.W.2d 733 (1987). Michigan has a statutory definition of force which is so dissimilar from the definition in N.D.C.C. § 12.1–01–04(11), that the case has no persuasive effect. Under the Michigan statute applied in *Patterson:*

> Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (iv).

. . . .

The circumstances are:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

*People v. Patterson*, 428 Mich. 502, 410 N.W.2d 733, 734–35 (1987).

[¶ 45] The effect of the majority opinion is to judicially import concepts of force similar to those in Michigan when the North Dakota legislature has explicitly indicated how the word is to be interpreted. The jury was provided with and applied the correct definition of the word.

[¶ 46] The majority concludes that for the State to convict, it must show Vantreece exerted force upon the complainant which compelled her to submit to having sex with him, and it "was not sufficient to prove Vantreece committed this crime with evidence that the complainant acquiesced in a sexual act with him because she 'learned from the past' to acquiesce in sexual advances without protest or resistance of any kind." Majority, at ¶ 21.

[¶ 47] The majority's position creates a dangerous legal precedent, either reintroducing the "resistance" requirement, requiring the State to prove the attacker's extrinsic use of force overbore the victim's will; or that the force used by the attacker must be so pervasive that it is self-evident the force was used to overcome the victim's will. I strongly disagree. An attacker exhibits sufficient "force" by exerting the force necessary to penetrate a nonconsenting victim. *See, e.g., State v. Garron,* 177 N.J. 147, 827 A.2d 243, 264 (2003); *State v. Sedia,* 614 So.2d 533, 535 (Fla. App.4 Dist.1993). The determination of whether force was used and whether that force was sufficient to compel the victim to engage in a sexual act is a jury issue, which should not be disturbed lightly. *See State v. Barth,* 2005 ND 134, ¶ 7, 702 N.W.2d 1. Further, gross sexual imposition is criminal because of the attacker's conduct, not the victim's resistance. *See* N.D.C.C. § 12.1–20–03(1)(a). Other jurisdictions have moved away from requiring resistance because it " 'may prove an invitation to danger of death or serious bodily harm.' " 2 Wayne R. LaFave, *Substantive Criminal Law* § 17.4(a) (2d ed.2003) (quoting Model Penal Code § 213.1, cmt. at 305 (1980)). Finally, " 'it is wrong to excuse the male assailant on the ground that his victim failed to protect herself with the dedication and intensity that a court might expect of a reasonable person in her situation.' " *Id.*

[¶ 48] On this record, based on the jury verdict, I find it disturbing to even use the word "acquiesce" to describe the woman's attitude to the sexual encounter. It suggests a woman pretending to be sleeping must do more in order not to be victimized. From the perpetrator's perspective, a sleeping woman is not communicating consent, and should not be available to be victimized because she is "acquiescing."

There may be concern that sometimes intercourse which begins consensually can evolve into nonconsensual contact and "force" and "compulsion" may be more difficult to analyze in such circumstances. However, it is peculiarly the province of the jury to be the fact-finders and to analyze such matters. In this case, if the jury believed the statements of the woman, as it must have to reach the verdict it did, this woman did nothing to "acquiesce" in having intercourse. Intercourse would not have happened but for the action of Vantreece. She was compelled to have intercourse solely by virtue of the physical action of Vantreece forcing his penis into her vagina. Given the plain language of our statute and the jury instructions given, the jury analyzed the evidence and came to a verdict that is concordant with our statute.

[¶ 49] There is sufficient evidence, when viewed in the light most favorable to the verdict, to support Vantreece's conviction of gross sexual imposition. I would affirm the district court's judgment.

[¶ 50] MARY MUEHLEN MARING, JJ., concur.