771 N.W.2d 585 (2009)
2009 ND 152
In the Matter of Alexander VANTREECE
Cass County State's Attorney, Petitioner and Appellee
v.
Alexander Vantreece, Respondent and Appellant.
No. 20090040.
Supreme Court of North Dakota.
August 18, 2009.
*586 Mark R. Boening (argued), Assistant State's Attorney, and Tanya Johnson Martinez (on brief), Assistant State's Attorney, Fargo, N.D., for petitioner and appellee.
Jeff A. Bredahl, Fargo, N.D., for respondent and appellant.
CROTHERS, Justice.
[¶ 1] Alexander Vantreece appeals from an order civilly committing him as a sexually dangerous individual. He argues the district court erred in finding he was a sexually dangerous individual under N.D.C.C. ch. 25-03.3 because the State failed to present clear and convincing evidence he has, or will have, serious difficulty controlling his behavior. We hold the evidence is sufficient to support the district court's finding that Vantreece is a sexually dangerous individual, and we affirm the order.

I
[¶ 2] In August 2007, shortly after this Court reversed Vantreece's conviction for gross sexual imposition under N.D.C.C. § 12.1-20-03(1)(a) and remanded for entry of judgment of acquittal on that charge in State v. Vantreece, 2007 ND 126, ¶ 1, 736 N.W.2d 428, the State petitioned to civilly commit Vantreece as a sexually dangerous individual under N.D.C.C. ch. 25-03.3. The State alleged Vantreece had been convicted of sexual offenses in Minnesota in 1978 and 1980, which constituted sexually predatory conduct under N.D.C.C. ch. 25-03.3, and his August 2005 sexual contact with the complainant in the North Dakota criminal case when he knew or should have known the contact was offensive to the complainant also constituted sexually predatory conduct. The State alleged Vantreece has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction making him likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.
[¶ 3] At an evidentiary hearing, the district court heard testimony from the complainant in the Cass County criminal case and from two licensed psychologists: Dr. Lincoln Danny Coombs from the North Dakota State Hospital, who conducted *587 a review of Vantreece's relevant records and prepared a written report, and Dr. James H. Gilbertson, a court-appointed expert who reviewed all of Vantreece's records, interviewed Vantreece and prepared a written report. The two experts disagreed on whether Vantreece is a sexually dangerous individual under N.D.C.C. ch. 25-03.3. The district court concluded the evidence clearly and convincingly established Vantreece is a sexually dangerous individual and ordered his commitment. We reversed and remanded for detailed findings of fact and conclusions of law. Matter of Vantreece, 2008 ND 197, ¶ 3, 758 N.W.2d 909, 2008 WL 5003448. We specifically said the district court had not addressed the substantive due process requirement of Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), which necessitates proof the committed individual has serious difficulty controlling his or her behavior. Vantreece, at ¶¶ 1, 3. On remand, the district court made further findings without hearing additional evidence and again ordered that Vantreece be civilly committed as a sexually dangerous individual.

II
[¶ 4] We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard in which we will affirm a district court's order "unless it is induced by an erroneous view of the law or we are firmly convinced [the order] is not supported by clear and convincing evidence." Matter of G.R.H., 2008 ND 222, ¶ 7, 758 N.W.2d 719. We have said that "`[e]valuation of credibility where evidence is conflicting is solely a trial court function.'" Matter of Hehn, 2008 ND 36, ¶ 23, 745 N.W.2d 631 (quoting Alumni Ass'n v. Hart Agency, Inc., 283 N.W.2d 119, 121 (N.D.1979)). If conflicts in witnesses' testimony exist, the district court is in the best position to evaluate the credibility of the witnesses. G.R.H., at ¶ 7. "It is not the function of this Court to second-guess the credibility determinations made by the trial court." Id. (quoting Hehn, at ¶ 23).

III
[¶ 5] Vantreece argues that the State failed to prove by clear and convincing evidence he has, or will have, serious difficulty in controlling his sexual behavior and that the district court's decision denied him substantive due process.
[¶ 6] In Vantreece, we said commitment as a "sexually dangerous individual" is authorized under N.D.C.C. ch. 25-03.3, if the State clearly and convincingly establishes the individual:
"`[1] engaged in sexually predatory conduct ... [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.'
"N.D.C.C. § 25-03.3-01(8). In addition to the three requirements of the statute, there must also be proof the committed individual has serious difficulty controlling his behavior to satisfy substantive due process requirements. [In the Matter of] E.W.F., 2008 ND 130, ¶ 10, 751 N.W.2d 686 (citing Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002))."
2008 ND 197, ¶ 1, 758 N.W.2d 909, 2008 WL 5003448 (quoting Matter of R.A.S., 2008 ND 185, ¶ 6, 756 N.W.2d 771). The substantive due process requirement of Crane is not a "fourth prong" of N.D.C.C. § 25-03.3-01(8); rather, the constitutional requirement is part of the definition of a *588 "sexually dangerous individual." Matter of R.A.S., 2009 ND 101, ¶ 15, 766 N.W.2d 712. Thus, "we have construed the definition of a sexually dangerous individual to require that there must be a nexus between the [individual's] disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous persons." G.R.H., 2008 ND 222, ¶ 7, 758 N.W.2d 719.
[¶ 7] Vantreece argues the testimony of Dr. Gilbertson establishes Vantreece could control his conduct and the testimony of Dr. Coombs did not address the Crane requirement that Vantreece has, or will have, serious difficulty controlling his behavior. Vantreece argues that to satisfy the substantive due process requirement of Crane, the State must introduce testimony from an expert explicitly opining that there is a nexus between a disorder and the inability to control behavior which suffices to distinguish a sexually dangerous individual from other recidivists. The State concedes it did not specifically ask either expert whether Vantreece has serious difficulty in controlling his behavior, but the State nevertheless argues other evidence introduced at the hearing supports the district court's finding that Vantreece has serious difficulty controlling his behavior.
[¶ 8] Vantreece has not cited, and we have not found, any authority requiring an expert to explicitly opine that a nexus exists between an alleged sexually dangerous individual's disorder and the inability to control his or her behavior. Nor are we persuaded Crane imposes that requirement. In Crane, 534 U.S. at 409-15, 122 S.Ct. 867, the United States Supreme Court considered the constitutional requirements substantively limiting civil commitment of a sexually dangerous offender. The Supreme Court said its decision in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), did not require a dangerous sexual offender to be completely unable to control his or her behavior, but the constitution nevertheless precludes commitment of a dangerous sexual offender without any lack-of-control determination. Crane, at 411-12, 122 S.Ct. 867. The Court explained that to satisfy substantive due process an offender must have "serious difficulty" controlling his or her behavior:
"And we recognize that in cases where lack of control is at issue, `inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."
Id. at 413, 122 S.Ct. 867.
[¶ 9] Crane underscores "that there must be proof of serious difficulty in controlling behavior," but does not necessarily require an expert to opine that an alleged sexually dangerous individual has serious difficulty in controlling his or her behavior. 534 U.S. at 413, 122 S.Ct. 867. Rather, Crane recognizes that in cases where lack of control is an issue, proof of "the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender ... from the dangerous but typical recidivist convicted in an ordinary criminal case." Id.
*589 [¶ 10] Other courts have sustained commitments of sexually dangerous individuals where the trier-of-fact decided the individual lacked the ability to control his conduct without referring to testimony of an expert explicitly opining on that question. See In re Detention of Traynoff, 358 Ill.App.3d 430, 294 Ill.Dec. 759, 831 N.E.2d 709, 718-19 (2005) (stating experts' testimony respondent suffered from paraphilia not otherwise specified and posed a moderate to high risk to reoffend, in conjunction with respondent's refusal to undergo treatment, his denial of self-blame and his placing blame on victim established respondent lacked ability to control his behavior); People v. Kastman, 335 Ill.App.3d 87, 268 Ill.Dec. 719, 779 N.E.2d 333, 345 (2002) (stating expert's testimony respondent's mental disorder affected his volitional capacity to the extent he is likely to reoffend is sufficient to support a finding of serious difficulty controlling behavior); In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708, 715-30 (2003) (stating Crane requires "some proof" that abnormality has impact on offender's ability to control behavior; sustaining commitments in consolidated cases without referring to testimony of expert opining that respondent lacked ability to control behavior); State v. Laxton, 2002 WI 82, ¶ 23, 254 Wis.2d 185, 647 N.W.2d 784 (stating evidence showing person's mental disorder predisposes person to engage in acts of sexual violence and evidence establishing a substantial probability the person will again commit such acts necessarily and implicitly includes proof that person's mental disorder involves serious difficulty in controlling his or her behavior).
[¶ 11] Under North Dakota law, an individual may not be committed as a sexually dangerous individual "unless expert evidence is admitted establishing that the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct." N.D.C.C. § 25-03.3-13. An alleged sexually dangerous individual's inability to control his or her behavior may be established by expert testimony explicitly opining that the individual is not able to control his behavior. See In re Martinelli, 649 N.W.2d 886, 890-91 (Minn.Ct.App.2002) (stating Crane requires "judicial finding of `lack of control' based on expert testimony tying that `lack of control' to a properly diagnosed mental abnormality or personality disorder before civil commitment may occur"; experts explicitly opined individual was not able to control his behavior). However, neither Crane nor our statutes require expert testimony explicitly opining the individual has serious difficulty controlling his or her behavior.
[¶ 12] In Hehn, this Court considered an argument that there was not sufficient evidence to establish an offender's propensity towards sexual violence was of such a degree to pose a threat to others, because the results of actuarial tests did not support a conclusion the individual was likely to reoffend. 2008 ND 36, ¶¶ 20-21, 745 N.W.2d 631. We explained, "The fact that these actuarial test scores did not give rise to scores showing a high risk of re-offending does not preclude the fact-finder from coming to an alternative conclusion." Id. at ¶ 21. "The importance of independent judicial decision-making means the judge, rather than the test scores or the psychologists who create them, is the ultimate decision-maker." Id. See Matter of M.D., 2008 ND 208, ¶ 10, 757 N.W.2d 559 ("ultimate decision to determine whether there is clear and convincing evidence sufficient for commitment rests with the district court"). Under that rationale, we conclude Crane and N.D.C.C. ch. 25-03.3 require *590 proof of difficulty in controlling behavior by expert evidence in the record from which the district court, as the ultimate decision-maker, can conclude the individual has serious difficulty controlling his or her behavior.
[¶ 13] Here, under our modified clearly erroneous standard of review, we conclude sufficient evidence exists from which the district court could conclude Vantreece is a sexually dangerous individual and has serious difficulty controlling his behavior. At the evidentiary hearing, the State introduced testimony and a psychological evaluation by Dr. Coombs. Dr. Coombs used the Diagnostic and Statistical Manual of Mental DisordersFourth Edition Text Revision and diagnosed Vantreece with "sexual sadism," a "personality disorder not otherwise specified with anti-social traits," and a "polysubstance dependence" in a controlled environment. Dr. Coombs' evaluation cited evidence that Vantreece served in Vietnam from 1967 through 1970, that he reported raping and killing "'12-20' women in Vietnam" during that time and that he experienced an "adrenaline rush" from those acts. Dr. Coombs also testified there was evidence Vantreece suffered from post-traumatic stress disorder as a result of his experience in Vietnam, and during treatment for that disorder he stalked female employees at Veteran's Administration facilities. Dr. Coombs also considered Vantreece's prior convictions for sexual assault in Minnesota in 1977 and 1980 and testified Vantreece admitted he had committed other sexual offenses for which he was never apprehended. Dr. Coombs acknowledged there were differences between the 1977 and 1980 sexual assaults in Minnesota and the August 2005 incident in North Dakota, but those differences did not change his opinion that Vantreece met the criteria for sexual sadism.
[¶ 14] Dr. Coombs' report stated Vantreece has a polysubstance dependence for which he was committed to a chemical dependency program in Minnesota in January 2005. Dr. Coombs' report further stated that Vantreece was provisionally discharged from the program in May 2005, but that he was returned to a program on July 20, 2005, after a probation revocation. Dr. Coombs' report states Vantreece refused further treatment after his readmission and was discharged from the program on July 31, 2005, which was shortly before his August 2005 sexual contact with the complainant in the North Dakota criminal case. Dr. Coombs testified the records indicated Vantreece had been drinking heavily when that sexual contact occurred.
[¶ 15] Dr. Coombs also testified regarding his diagnosis of a personality disorder not otherwise specified with anti-social traits. Dr. Coombs testified that anti-social personality disorder is signaled by a pervasive pattern of disregard for and violation of the rights of others. Dr. Coombs noted that Vantreece's criminal history is indicative of his failure to conform to social norms, that he was deceitful and has changed his accounts many times regarding criminal charges and that his impulsivity is reflected over a period of time and most recently with the breaking of a window in his ex-wife's car and resulting criminal charges. Dr. Coombs' report also noted irritability and aggressiveness evidenced by Vantreece's history of multiple instances of domestic violence against his ex-wife. Dr. Coombs testified Vantreece's disorders are the two main pathways known to recidivism. As a result, Dr. Coombs opined Vantreece was likely to engage in further acts of sexual predatory conduct as defined by N.D.C.C. § 25-03.3-01. Dr. Coombs testified that even if Vantreece was not afflicted with sexual sadism, he was a sexually dangerous individual because his diagnosed personality disorder *591 is a congenital condition rendering him likely to engage in further acts of sexual predatory conduct. Dr. Coombs testified Vantreece scored a 32.9 on a Psychopathy Checklist Revised, which exceeds the research definition of a psychopath by 2.9 points and demonstrates Vantreece was detached, cold, grandiose, manipulative, willing to lie, lacking empathy and not remorseful. Dr. Coombs reported Vantreece has a moderate to high risk of recidivism on three actuarial tests, the RRASOR, the Static-99 and the MnSOSTR, which Dr. Coombs opined met the criteria for likely to engage in further acts of sexually predatory conduct under N.D.C.C. ch. 25-03.3. Dr. Coombs also noted Vantreece had not completed any form of intensive sex offender treatment and remained an untreated sex offender. Dr. Coombs' report also stated that while Vantreece was incarcerated at the Cass County jail in 2006, "he was constantly masturbating to such an extent that he had to be given his own cell." Dr. Coombs concluded to a reasonable degree of professional certainty that Vantreece meets the criteria of a sexually dangerous individual under North Dakota law.
[¶ 16] At the hearing, Vantreece called Dr. Gilbertson, a psychologist appointed by the court. Dr. Gilbertson testified Vantreece suffers from a "personality disorder with antisocial features with a good psychopathic loading." Dr. Gilbertson described Vantreece as "the kind of person who takes what he want[s] when he wants it, that's sort of the antisocial inclination." Dr. Gilbertson testified he did not find evidence of a sexual disorder, but there was evidence of a personality disorder meeting the definition for a sexually dangerous individual. Dr. Gilbertson offered a "bifurcated opinion" regarding Vantreece's August 2005 sexual contact with the complainant in the North Dakota criminal case. Dr. Gilbertson testified that if the court found that sexual contact was sexually predatory conduct, he believed Vantreece was likely to reoffend, but that if the court found that sexual contact was not sexually predatory conduct, Vantreece was not likely to reoffend. Dr. Gilbertson diagnosed Vantreece with post-traumatic stress disorder, schizoaffective disorder, polysubstance dependency and a personality disorder not otherwise specified with anti-social traits. Dr. Gilbertson testified chemical dependency and post-traumatic stress disorder both can compromise an individual's ability to control behavior. Dr. Gilbertson's report stated that during prior treatment for post-traumatic stress disorder, Vantreece had expressed concern over his uncontrolled anger and rage. Dr. Gilbertson's report also stated Vantreece had experienced flashbacks and periods of increasing anger and reduced impulse control. Dr. Gilbertson's report said Vantreece evidences anti-social inclinations and associated traits with indications of psychopathy features.
[¶ 17] The district court found the State clearly and convincingly established Vantreece is a sexually dangerous individual. The court found Vantreece's August 2005 sexual contact with the complainant in the North Dakota criminal case constituted sexually predatory conduct under N.D.C.C. § 25-03.3-01(9)(b)(1) and his convictions in Minnesota in 1977 and 1980 also constituted sexually predatory conduct under N.D.C.C. § 25-03.3-01(9)(a)(1). See G.R.H., 2008 ND 222, ¶ 7, 758 N.W.2d 719 ("All sexually predatory conduct, including that which did not result in a charge or conviction, may be considered under a N.D.C.C. § 25-03.3-01(8) analysis."). The district court found Vantreece suffered from a personality disorder not otherwise specified, post-traumatic stress disorder, schizoaffective disorder, psychotic features, anti-social inclinations, and uncontrolled *592 rage and anger. The court determined Vantreece was likely to engage in further acts of sexual predatory conduct, finding results from several actuarial tests established he has a moderate to high risk of reoffending and has a long history of impulsivity, aggressiveness, disregard for the safety of others, irresponsibility, lack of remorse, and a need to control women. The court explicitly found Vantreece has serious difficulty controlling his behavior:
"[Vantreece] by his own admission has uncontrolled anger and rage. He has psychopathic traits which makes him an individual who `takes what he wants.' He does not experience remorse. [Vantreece] lacks a good working conscience. As a result, [Vantreece] has serious difficulty controlling his behavior. This is evidenced by the following:
"a) Vantreece's unusual sexual preoccupation, including having to be moved into his own cell while at the Cass County Jail in 2006 because he was compulsively masturbating.
"b) The references and medical record of Vantreece stalking female VA employees.
"c) Vantreece has demonstrated an inability to control his anger (which in the past he has stated is uncontrolled), including the incident for which he was released from prison in 2004 for smashing out the car window while his wife was seated inside. Vantreece also [has] a history of domestic violence in addition to numerous sexual assaults, many of which were violent.
"d) Vantreece has been resistant to cooperating with his past treatments. Shortly after being released from chemical dependency treatment in 2005, Vantreece engaged in sexual contact with [the complainant in the North Dakota criminal case].
"e) Vantreece does not have remorse for his actions. His accounts of his past sexual offense[s] vary greatly from the actual incidences indicating Vantreece has no appreciation for the wrongful nature of his conduct.
"f) Vantreece has demonstrated a non-compliance with his treatment in the past including not taking his prescribed medications. Vantreece has uncontrolled anger and rage-type behaviors, which have been repeatedly demonstrated in his past history.
"g) The need to control women."
[¶ 18] We conclude expert evidence exists from which the district court could find a nexus between Vantreece's personality disorders and dangerousness to show he has serious difficulty controlling his behavior which suffices to distinguish him from other dangerous persons. There is evidence from which the district court could find that Vantreece has uncontrolled anger, rage and reduced impulse control and that a nexus exists between Vantreece's diagnosed disorders and dangerousness which establishes serious difficulty in controlling his behavior sufficient to distinguish him from other ordinary criminal recidivists. The "district court is the best evaluator of credibility," and it "`is not the function of this Court to second-guess the credibility determinations made by the trial court.'" R.A.S., 2009 ND 101, ¶ 10, 766 N.W.2d 712 (quoting G.R.H., 2008 ND 222, ¶ 7, 758 N.W.2d 719). Under our modified clearly erroneous standard of review, we are not convinced the district court's order is not supported by clear and convincing evidence, and we conclude the court's decision *593 satisfies the substantive due process requirements of Crane.

IV
[¶ 19] We affirm the commitment order.
[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.