2009 ND 101

**In the Matter of R.A.S.**

**Cass County State's Attorney, Appellee**

v.

**R.A.S., Appellant.**

**No. 20090001.**

Supreme Court of North Dakota.

June 17, 2009.

Birch P. Burdick, State's Attorney, Fargo, ND, for appellee; submitted on brief.

Richard E. Edinger, Fargo, ND, for appellant; submitted on brief.

KAPSNER, Justice.

[¶ 1] R.A.S. appeals a district court order denying his petition for discharge from commitment as a sexually dangerous individual. We affirm the order.

I

[¶ 2] In February 2004, the State of North Dakota petitioned to have R.A.S. committed as a sexually dangerous individual. At the commitment proceeding, the district court heard testimony from several witnesses including Dr. Belanger and Dr. Etherington. In August 2004, the district court entered an order committing R.A.S. to the care, custody, and control of the executive director of the Department of Human Services as a sexually dangerous individual according to N.D.C.C. ch. 25–03.3. *Matter of R.A.S.*, 2008 ND 185, ¶ 2, 756 N.W.2d 771. R.A.S. did not appeal the initial order of commitment.

[¶ 3] R.A.S. petitioned for discharge under N.D.C.C. § 25–03.3–18 in October 2007. *Id.* at ¶ 3. The district court held a discharge hearing in January 2008. *Id.* At the commitment proceeding, the State's expert witness, Dr. Lynne Sullivan, and R.A.S.'s expert witness, Dr. James H. Gilbertson, testified. *Id.* Dr. Sullivan testified R.A.S. remains a sexually dangerous individual, and she recommended R.A.S. remain committed. *Id.* Dr. Gilbertson testified R.A.S. was not likely to engage in further acts of sexually predatory conduct. *Id.* On January 15, 2008, the district court entered an order denying R.A.S.'s petition for discharge, holding "[t]he State has shown by clear and convincing evidence that [R.A.S.] remains a sexually dangerous individual as defined in N.D.C.C. § 25–03.3–01."

[¶ 4] R.A.S. appealed to this Court, asserting "the State did not prove by clear and convincing evidence that he [was] likely to engage in further acts of sexually predatory conduct[.]" *R.A.S.*, 2008 ND 185, ¶ 1, 756 N.W.2d 771. This Court reversed the district court order and remanded the case to the district court for detailed findings of fact and conclusions of law to support the district court's order denying R.A.S.'s petition for discharge. *Id.* at ¶ 10.

[¶ 5] On December 2, 2008, the district court entered an order denying R.A.S.'s petition for discharge. In its order, the district court made explicit findings detailing the conduct of R.A.S. and how that conduct related to the criteria for establishing a sexually dangerous individual. R.A.S. appeals this order, asserting the State failed to prove by clear and convincing evidence that he is likely to engage in further acts of sexually predatory conduct and contending the district court order is not supported by clear and convincing evidence that R.A.S. has serious difficulty controlling his behavior.

II

[¶ 6] At a discharge hearing, the State has the burden to prove by clear and convincing evidence that the individual remains a sexually dangerous individual. N.D.C.C. § 25–03.3–18(4). To meet this burden, the State is required to show the individual:

[1] engaged in sexually predatory conduct and [2] who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8). We have held the phrase "likely to engage in further acts of sexually predatory conduct" means "the individual's propensity towards sexual violence is of such a degree as to pose a threat to others." *Matter of E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686 (citation omitted).

[¶ 7] Under the third prong of N.D.C.C. § 25–03.3–01(8), the district court found:

The most disputed part of the hearing involved the third prong, whether [R.A.S.] is likely to engage in further acts of sexually predatory conduct. Dr. Sullivan testified quite emphatically that [R.A.S.] is likely to so engage in further acts of sexually predatory conduct. Dr. Sullivan not only reviewed the initial scoring of the various psychometric tests performed by [R.A.S.], but also rescored those tests herself. The results from the initial examiners (Dr.'s Etherington and Bel[ ]anger) and Dr. Sullivan's rescoring of those instruments are remarkably consistent (unlike the results of the scoring of Dr. Gilbertson). Dr. Sullivan credibly testified that [R.A.S.] has an elevated risk of reoffending. In fact, Dr. Sullivan stressed that the combination of [R.A.S.'s] psychopathy and sexual disorder (paraphilia nos) is known in the profession as the "deadly duo" because of the high risk it presents for reoffending.

[R.A.S.] argues the State has not met its burden because it did not present any clear and convincing evidence that [R.A.S.] "is more likely to offend than the *average* sexual offender." If the State had only presented evidence that [R.A.S.] was an average sexual offender and that an average sexual offender was likely to "offend," then [R.A.S.] would be correct and the State would not have met its burden. Howev-

er, the State did more than that in this case. The State presented specific evidence concerning [R.A.S.] (and whether [R.A.S.] was likely to engage in further sexually predatory conduct). The State did not simply rely upon a statistical profile of a "average sexual offender." It presented evidence of [R.A.S.'s] individual assessments and [R.A.S.'s] individual behaviors. The State's evidence was credible and believable. The State has met its burden as to the third prong of the definition.

(Footnote omitted).

■■■ [¶ 8] On appeal, R.A.S. contends the State did not prove the third prong of N.D.C.C. § 25–03.3–01(8). R.A.S. does not raise any contentions pertaining to the first and second prongs of N.D.C.C. § 25–03.3–01(8). The State contends the district court correctly determined R.A.S. remains a sexually dangerous individual and is likely to engage in further acts of sexually predatory conduct. "This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard, and we will affirm the district court's decision unless the court's order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *R.A.S.*, 2008 ND 185, ¶ 5, 756 N.W.2d 771 (citing *E.W.F.*, 2008 ND 130, ¶ 8, 751 N.W.2d 686); *see* N.D.C.C. § 25–03.3–18(4).

[¶ 9] R.A.S. argues the State did not meet its burden because Dr. Gilbertson testified R.A.S. is not likely to engage in sexually predatory conduct. R.A.S. contends: "Essentially, it is Dr. Sullivan's testimony versus Dr. Gilbertson's testimony." R.A.S. explains why, in his opinion, Dr. Gilbertson's credentials cannot be challenged. The State contends R.A.S. is really arguing Dr. Gilbertson has more experience than Dr. Sullivan; therefore, the

district court should have accepted Dr. Gilbertson's expert opinion.

■ [¶ 10] This Court has repeatedly held, "[e]valuation of credibility where evidence is conflicting is solely a trial court function." *Matter of Hehn*, 2008 ND 36, ¶ 23, 745 N.W.2d 631 (citations omitted; alteration in original). Additionally, if testimony conflicts, the district court is the best evaluator of credibility. *Matter of G.R.H.*, 2008 ND 222, ¶ 7, 758 N.W.2d 719 (citation omitted). "It is not the function of this Court to second-guess the credibility determinations made by the trial court." *Id.* (citation omitted). Because the evaluation of the credibility of a witness is a trial court function, we do not agree with R.A.S.'s contention that the district court was bound to accept the opinion of the expert witness with greater experience.

[¶ 11] Additionally, R.A.S. argues Dr. Sullivan is biased, and he cites two reasons in support of this assertion. First, he asserts Dr. Sullivan is biased because she defended Dr. Belanger, one of two expert witnesses who testified in support of the original commitment on behalf of the petitioner. "Dr. Sullivan's hardline stance on Belanger is a clear indication of her bias. She has a clear motive to defend Belanger—to protect the state hospital from civil lawsuits and civil liability." Dr. Belanger only played a role in R.A.S.'s initial commitment. The commitment order was entered on July 30, 2004, and R.A.S. did not appeal that order. Dr. Belanger's credibility in this case is irrelevant because the question before this Court does not pertain to whether R.A.S. should have been committed in 2004; rather, it pertains to whether R.A.S. remained a sexually dangerous individual at the January 2008 hearing. Dr. Belanger's credibility and Dr. Sullivan's opinion of Dr. Belanger are irrelevant in the case before this Court.

[¶ 12] Second, R.A.S. argues: "Dr. Sullivan blatantly ignores principles in the general scientific community." He asserts she ignored studies indicating a sexual offender ages out of reoffending. R.A.S. contends once a sexual offender reaches age 40, there is a 12 percent decrease in the chance of sexual offense recidivism. Dr. Sullivan recognized age is relevant, because she testified studies show as a person ages, his risk of sexual offending decreases, to some extent. Dr. Sullivan testified she applied this concept when evaluating R.A.S.

[¶ 13] Further, R.A.S. contends Dr. Sullivan failed to adhere to the general principles in the scientific community; she used the 1999 scoring rules, rather than the 2003 scoring rules. R.A.S. does not assert if Dr. Sullivan would have used the 2003 scoring rules, rather than the 1999 scoring rules, she would have reached a different result. Dr. Sullivan testified she does not know what R.A.S.'s score would be under the 2003 scoring rules. The record does not indicate Dr. Sullivan would have reached a different result had she used the 2003 scoring rules. R.A.S.'s argument that "Dr. Sullivan blatantly ignores principles in the general scientific community" is not supported by this record. We hold the district court did not err by finding the State proved by clear and convincing evidence that R.A.S. is likely to engage in further acts of sexually predatory conduct.

### III

[¶ 14] In addition to the statutory requirements set forth in N.D.C.C. § 25–03.3–01(8), "the United States Supreme Court held that in order to satisfy substantive due process requirements, the individual must be shown to have serious difficulty controlling his behavior." *Hehn*, 2008 ND 36, ¶ 19, 745 N.W.2d 631 (citing *Kan-*

*sas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)).

In *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court concluded that commitment as a sexually dangerous individual cannot constitutionally be sustained without determining that the person to be committed has serious difficulty in controlling his or her behavior. Therefore, consistent with N.D.C.C. § 1–02–38(1), we have construed the definition of a sexually dangerous individual to require that there must be a nexus between the disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous persons.

*G.R.H.*, 2008 ND 222, ¶ 7, 758 N.W.2d 719 (citing *E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686).

[¶ 15] This constitutional requirement established by the United States Supreme Court in *Kansas v. Crane* is not a "fourth prong" to the statutory requirement of N.D.C.C. § 25–03.3–01(8). Rather, it is a requirement that must be met before a person may be civilly committed, and it may be viewed as part of the definition of a sexually dangerous individual. *See E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686 ("In addition to the three requirements contained in the plain language of the statute, the United States Supreme Court has held that substantive due process rights require the individual facing commitment must be shown to have serious difficulty controlling his behavior. This additional consideration is necessary to distinguish a sexually dangerous individual from the 'dangerous but typical recidivist convicted in an ordinary criminal case.'") (citations omitted).

[¶ 16] The district court found R.A.S. has serious difficulty controlling his actions. To support this finding, the district court listed a number of acts committed by R.A.S. since his previous petition for discharge, which indicate he has serious difficulty controlling his behavior. The district court also quoted Dr. Sullivan's supplemental report, which provided: "In the absence of engaging in treatment, there is no reason to believe that [R.A.S.'s] paraphilia or his antisocial personality disorder would simply disappear or lower in intensity to the extent that they no longer make him likely to engage in future sexually predatory conduct."

[¶ 17] The district court noted it was unclear as to the State's standard of proof on this requirement, and it held the State met both the preponderance of the evidence standard and the clear and convincing evidence standard. Section 25–03.3–18(4), N.D.C.C., provides: "At any hearing held pursuant to a petition for discharge, the burden of proof is on the state to show by clear and convincing evidence that the committed individual remains a sexually dangerous individual." Because the requirement set forth in *Kansas v. Crane* is constitutionally necessary to establish that a person is a sexually dangerous individual, the State must show by clear and convincing evidence that the individual has serious difficulty controlling his behavior.

■ [¶ 18] On appeal, R.A.S. contends the State did not prove by clear and convincing evidence that R.A.S. has serious difficulty controlling his behavior. "This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard, and we will affirm the district court's decision unless the court's order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *R.A.S.,*

2008 ND 185, ¶ 5, 756 N.W.2d 771 (citing *E.W.F.*, 2008 ND 130, ¶ 8, 751 N.W.2d 686).

[¶ 19] R.A.S. argues he has been at the North Dakota State Hospital for four years, and he does not have serious difficulty controlling his behavior because since his initial commitment, he has not committed any acts of sexually predatory conduct, as defined in N.D.C.C. § 25–03.3–01(9). However, the State correctly contends such a requirement does not exist for the continued civil commitment of a sexually dangerous individual; rather, the State has to prove by clear and convincing evidence that the individual remains a sexually dangerous individual, as defined in N.D.C.C. § 25–03.3–01(8). N.D.C.C. § 25–03.3–18(4).

[¶ 20] R.A.S. further asserts none of the acts committed by R.A.S. and cited by the district court took place in the community; they all occurred at the State Hospital. Neither N.D.C.C. ch. 25–03.3 nor this Court's precedent require that a committed individual's actions, which prove he has a serious difficulty controlling his behavior, have to occur in the community, rather than at the State Hospital or any other institution. Additionally, Dr. Gilbertson testified when R.A.S. has spent time in public, he has not done well on conditional release and in the past committed multiple sexual crimes. For the foregoing reasons, we affirm the district court order finding the State proved by clear and convincing evidence that R.A.S. has serious difficulty controlling his behavior.

## IV

[¶ 21] We considered the remaining arguments and determined they are either unnecessary to this decision or are without merit. The district court order is affirmed.

[¶ 22] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.