Filed 6/17/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 102

In the Matter of Loring Reil Sky Rush

Christopher D. Griffin, Assistant State’s

Attorney for Grand Forks County, Petitioner and Appellee

v.

Loring Reil Sky Rush, Respondent and Appellant

No. 20080337

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Joel D. Medd, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Christopher D. Griffin, Assistant State’s Attorney, P.O. Box 5607, Grand Forks, ND 58206, for petitioner and appellee.

Darla J. Schuman, Schuman Law Office, 3001-A 32nd Ave. S., Grand Forks, ND 58201, for respondent and appellant.

Matter of Rush

No. 20080337

VandeWalle, Chief Justice.

[¶1] Lorin Reil Sky Rush appealed from a district court order committing him to the custody of the North Dakota Department of Human Services as a sexually dangerous individual.  We affirm the order for civil commitment, holding the district court properly found a nexus between Rush’s disorders and sexual dangerousness, that the court properly interpreted the evidence presented at the commitment hearing, and that the court did not commit reversible procedural error by failing to set aside sufficient time during Rush’s first commitment hearing.

I.

[¶2] In May of 2007, Rush entered a plea agreement after he was charged with sexual assault for having sexual intercourse with a 15-year old girl when he was 18 years old.  The initial report of the incident noted that the victim accused Rush of using force; however, he was eventually charged with a class C felony which considered only that the female was a juvenile and not whether the intercourse was consensual.  Rush was sentenced to serve five years with three years suspended, and five additional years of probation.  He was also required to register as a sex offender for a period of ten years.  

[¶3] On June 17, 2008, shortly before Rush was scheduled to be released from custody, the State filed a petition to civilly commit him as a sexually dangerous person under N.D.C.C. ch. 25-03.3.  In the petition, the State cited both the incident for which he was then incarcerated, as well as a prior sexual assault charge he received when he was  a juvenile and had offensive contact with another minor.  The State also noted a period of time he spent in a juvenile institution following his earlier offense, during which he displayed sexually inappropriate behavior toward other juveniles in the facility.  The petition also listed several non-sexual offenses committed by Rush, including theft, burglary, minor in possession or consumption of alcohol, and three incidents of violating release conditions.  The petition cited a review conducted by a doctor with the North Dakota State Hospital who recommended there was sufficient risk that Rush would engage in further sexually predatory conduct to warrant a formal civil commitment evaluation.  On June 23, 2008, the district court found there was probable cause that Rush was a sexually dangerous individual, and ordered him transferred to the North Dakota State Hospital for the evaluation requested by the State.

[¶4] On August 11, 2008, Dr. Lynne Sullivan of the North Dakota State Hospital issued her evaluation report determining that Rush was a sexually dangerous individual.  Dr. Sullivan found that Rush suffered from an alcohol abuse disorder and antisocial personality disorder, both of which she found contributed to his sexual offenses.  Dr. Sullivan also conducted a series of risk assessment tests to determine Rush’s likelihood of sexual recidivism.  Dr. Sullivan scored Rush with a 4 on the Rapid Risk Assessment for Sex Offense Recidivism (RRASOR), indicating a 49% chance of re-offending within ten years.  Rush scored a 9 on the Static-99 test, which indicates a 52% chance of re-offending within 15 years.  Dr. Sullivan next used the Minnesota Sex Offense Screening Test, Revised (MnSOST-R), on which Rush scored a 12 plus, indicating a 54% chance of re-offending within six years.  Finally, Dr. Sullivan administered the Psychopathy Checklist-Revised (PCL-R) test, on which she found that Rush scored a 34, which put him at the 99 percentile among adult male patients, meaning that he is “more psychopathic than 99 percent of the 1,246 North American male adult forensic psychiatric patients that [the PCL-R] was normed on.”  Dr. Sullivan also found that Rush lacked empathy and does “not have an adequate cognitive understanding of others’ experiences and how he is impacting them.” On this point Dr. Sullivan specifically noted the report that the victim of his most recent sexual assault repeatedly stated “no” and “stop” during the encounter, while he asked her “why” and did not stop.  Dr. Sullivan concluded her report by stating, with a “reasonable degree of scientific certainty,” that Rush was likely to engage in further acts of sexually predatory conduct, and was thus a sexually dangerous individual.

[¶5] Dr. Sullivan would later testify that she had some prior knowledge of Rush before she performed her evaluation of him.  While Rush was in a juvenile detention center after his first sexual offense, he was treated by a therapist named Deon Mehring who later served as a practicum student at the North Dakota State Hospital in 2006, and then as Dr. Sullivan’s intern from October of 2007 to October of 2008.  In 2006, Mehring discussed with Dr. Sullivan an unnamed patient Mehring had treated several years before at a juvenile center, who she “knew at the time . . . would be back, that he would commit another sex offense.”  Later, when Mehring became aware of a group of individuals coming to the State Hospital for civil commitment evaluations and noted Rush’s name, she identified him to Dr. Sullivan as the individual she had previously spoken about.

[¶6] The civil commitment hearing was originally scheduled for August 19, 2008.  However, Rush requested, and was granted, permission to have an independent psychological evaluation conducted, and the hearing was rescheduled for October 2, 2008.  The independent evaluation was compiled by Dr. Robert Riedel, who stated that there was “little difference” between his results and those compiled by Dr. Sullivan. Dr. Riedel agreed that Rush had antisocial personality disorder and an alcohol problem, both of which contributed to a higher expectation of sexual recidivism.  Dr. Riedel also diagnosed Rush with the sexual disorder paraphilia, NOS, nonconsent.  In applying the various assessment tests, Dr. Riedel scored Rush with a 4 on the RRASOR, and a 6 on the Static-99, which matched the findings of Dr. Sullivan.  On the MnSOST-R, Dr. Riedel scored Rush with a 9, which represented a 54% chance of re-offending within six years, and a 32 on the PCL-R.  Dr. Riedel later testified that, when there is a combination of paraphilia diagnosis and a score over 25 on the PCL-R, there is a risk of sexual recidivism that is greater than the risk assessment instruments can estimate.  However, Dr. Riedel generally found that Rush was a “close call” as to whether he would sexually re-offend, as the majority of the assessment tests placed his chances of recidivism in the 50% range.  Dr. Riedel concluded there was a nexus between Rush’s diagnosed disorders and his sexual offenses; however, Dr. Riedel recommended outpatient treatment over inpatient treatment, as Rush would be under close supervision and continuing sex offender treatment, had completed chemical dependency treatment, and had a support system outside the hospital.

[¶7] The hearing for civil commitment began on October 2, 2008.  During Dr. Sullivan’s testimony, the court noted that it had scheduled another hearing for the afternoon.  The court and Rush’s counsel agreed to take the witnesses out of order, as Dr. Riedel had flown in from Florida to testify.  The court had Dr. Sullivan temporarily step down, and Dr. Riedel gave his full testimony before the court was forced to adjourn due to time constraints.  The court rescheduled the rest of the hearing for October 20, during which Dr. Sullivan concluded her testimony by telephone.  On November 13, 2008, the district court issued its order, committing Rush to the custody and control of the North Dakota Department of Human Services.  

II.

[¶8] Rush argues the district court erred when it ordered him to be committed as a sexually dangerous individual, contending the court failed to cite evidence of a nexus between his disorders and sexual dangerousness. 

[¶9] In reviewing civil commitments of sexually dangerous individuals, this Court uses a modified clearly erroneous standard and will affirm the district court’s decision unless the court’s order is induced by an erroneous view of the law, or this Court is convinced the order is not supported by clear and convincing evidence.  
In re Midgett
, 2007 ND 198, ¶ 6, 742 N.W.2d 803.  The State has the burden of proving, by clear and convincing evidence, that the individual engaged in sexually predatory conduct, and has a congenital or acquired condition that is manifested by a sexual disorder, personality disorder, or other mental disorder which makes that individual likely to engage in further acts of sexually predatory conduct which constitutes a danger to the physical or mental health or safety of others.  N.D.C.C. § 25-03.3-

01(8).  There must be a causal relationship or nexus between the individual’s disorder and dangerousness, which indicates the individual’s mental disorder is linked to an inability to control behavior, and which would therefore likely result in further sexually predatory conduct.  
In re G.R.H.
, 2006 ND 56, ¶ 17, 711 N.W.2d 587.  Such a nexus is necessary to distinguish a dangerous sexual offender whose disorder would subject him or her to civil commitment from the “dangerous but typical” recidivist in the ordinary criminal case.  
Id.
 at ¶ 18.

[¶10] In addition to the requirement that the State establish such a nexus, the district court must specifically state in its memorandum opinion the facts upon which its ultimate conclusion is based.  
In re R.A.S.
, 2008 ND 185, ¶ 8, 756 N.W.2d 771; 
see also
 N.D.R.Civ.P.52(a) (“[T]he court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.”).  “This Court cannot review a district court’s decision when the court does not provide any indication of the evidentiary and theoretical basis for its decision because [this Court is] left to speculate what evidence was considered and whether the law was properly applied.”  
R.A.S.
, 2008 ND 185, ¶ 8, 756 N.W.2d 771.  Detailed findings, including credibility determinations and references to evidence the court relied on in making its decision, inform both the committed individual and this Court of the evidentiary basis for the district court’s decision.  
Id.
 at ¶ 9.

[¶11] In its order, the district court analyzed each element required by N.D.C.C. § 25-03.3-01(8) to find that Rush was a sexually dangerous individual.  In doing so, the court discussed his prior sexual offenses, the fact that both Dr. Sullivan and Dr. Riedel diagnosed Rush with antisocial personality disorder, that Dr. Sullivan diagnosed Rush with an alcohol abuse disorder and Dr. Riedel diagnosed him with paraphilia, and that both doctors came up with similar results when they gave Rush the standard assessment tests, which indicated that there was at least a 50% chance of sexual recidivism.  The court also noted that, although Dr. Riedel felt Rush could do well in outpatient treatment, he felt it was a “close call.”  Further, the court observed Dr. Sullivan’s findings that Rush did have problems controlling his behaviors as evidenced by “decisions that fail to respond to social norms, are deceitful, impulsive, irresponsible and without remorse.” 

[¶12] Moreover, the evidence relied upon and cited by the court provides the basis for finding a nexus between Rush’s disorders and sexual dangerousness.  This Court has stated that a diagnosis of antisocial personality disorder does not by itself establish a nexus between the requisite disorder and future dangerousness.  
In re J.M.
, 2006 ND 96, ¶ 10, 713 N.W.2d 518.  Instead, the evidence must clearly show the antisocial personality disorder is likely to manifest itself as a serious difficulty in controlling sexually predatory behavior.  
Id.
  Dr. Sullivan found that Rush’s antisocial personality disorder and alcohol abuse problems were contributing factors to his sexual offenses.  Dr. Riedel, the source of the independent evaluation requested by Rush, stated specifically that there was a nexus between Rush’s disorders and sexual offenses. Both experts found that Rush acted upon impulses and had problems controlling his behavior.  Therefore, the district court’s order included detailed findings discussing the facts it relied upon in making its decision on whether there was a nexus between Rush’s disorders and sexual dangerousness, which provides this Court with an evidentiary basis for the district court’s decision.

III.

[¶13] Rush next argues the district court erred in its interpretation of the evidence presented at the civil commitment hearing.  Specifically, Rush argues the district court erred by relying on the testimony of Dr. Sullivan due to her prior knowledge of Rush through her relationship with Mehring, and that the court improperly relied on the assessment test scores. 

A.

[¶14] Rush contends the district court erred by relying on the opinions of Dr. Sullivan in its decision, focusing on her prior knowledge of Rush gained through her relationship with Deon Mehring.  The credibility of expert witnesses, and the weight to be given their testimony, are matters to be determined by the trier of facts.  
Gardebring v. Rizzo
, 269 N.W.2d 104, 109 (N.D. 1978).  In a commitment proceeding, expert witnesses may base their opinions on any information reasonably relied upon by psychologists in determining whether an individual is sexually dangerous.  
Midgett
, 2007 ND 198, ¶ 12, 742 N.W.2d 803; 
see also
 N.D.R.Ev. 703 (“The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.”).  In 
In re D.V.A.
, 2004 ND 57, 676 N.W.2d 776, the expert witness was a psychologist who relied on penitentiary records, medical records, conversations with another psychologist, and interviews with the respondent to form her opinion.  
Id.
 at ¶ 5.  This Court found that the respondent had not shown this evidence was unreasonably relied upon, and that the weakness or non-existence of a basis for an expert’s opinion goes to their credibility, and not necessarily to the admissibility of the opinion evidence.  
Id.
 at ¶ 9.

[¶15] Here, the district court had the ability to judge the credibility of the expert witnesses called by both parties.  Whatever information formed the basis of Dr. Sullivan’s opinion went to her credibility as an expert witness, and therefore fell within the purview of the district court.  Further, while Dr. Sullivan did not mention her conversation with Mehring as having any basis on her decision to recommend civil commitment, using such a discussion as one source in forming an expert opinion would not be improper, and is little different than the expert in 
D.V.A.
 who spoke with another psychologist regarding the respondent.  Here, Dr. Sullivan had several sources from which to form her opinion, including her conversations with Rush and the results of his assessment tests.  The district court was able to make credibility determinations regarding Dr. Sullivan, and committed no reversible error in deciding to base its findings, in part, on her testimony and evaluation.

B.

[¶16] Rush argues the district court erred by placing “great weight” upon his assessment test results “and little else.”  This Court has previously noted that raw scores from actuarial tests should not overshadow the ultimate diagnoses and opinions of expert witnesses.  
In re P.F.
, 2006 ND 82, ¶ 22, 712 N.W.2d 610.  However, there is no reason to believe the district court improperly weighed the evidence by focusing solely on the results of Rush’s scores.  In its order for commitment, the district court considered several facts, including that Rush had engaged in sexually predatory conduct, and that both Dr. Sullivan and Dr. Riedel diagnosed him with an antisocial personality disorder.  The court also noted that Dr. Sullivan diagnosed Rush with an alcohol abuse disorder, and Dr. Riedel diagnosed him with the sexual disorder of paraphilia.  The court considered Dr. Sullivan’s analysis about Rush’s non-sexual criminal record, and that alcohol had contributed to his sexual offenses.  The court found that low-intensity treatment had so far not worked for Rush, and noted Rush has a “serious difficulty in controlling behavior.”  While the district court did consider the results of the assessment tests, it considered all the evidence before it when it found there was clear and convincing evidence that Rush was a sexually dangerous person who needed an intensive sexual treatment program.  The fact Dr. Sullivan and Dr. Riedel did not agree on treatment does not mean the State has failed to carry its burden of proving, by clear and convincing evidence, that Rush is likely to engage in further acts of sexually predatory conduct which constitutes a danger to the health or safety of others.  
See
 N.D.C.C. § 25-03.3-

01(8).

IV.

[¶17] Rush finally argues the district court committed reversible error by failing to initially set aside sufficient time to conduct the civil commitment hearing which caused witnesses to testify out of order and telephonically.  Rush contends this caused “undue delay” which violated his due process rights.

[¶18] Section 25-03.3-13, N.D.C.C., requires the district court to conduct a commitment proceeding to determine whether an individual is a sexually dangerous individual within sixty days after a finding of probable cause.  However, the court may extend this time period for good cause.  
Id.
  Further, for the delay of a commitment hearing to be successfully contested, the individual must show the delay violated his or her rights.  
In re J.M.
, 2006 ND 96, ¶ 23, 713 N.W.2d 518.  The district court’s decision to continue the commitment hearing from October 2 to October 20 was proper under the “good cause” exception of N.D.C.C. § 25-03.3-13.  This Court has previously upheld extensions of time for a hearing because of scheduling problems in the district court’s calendar.  
In re M.D.
, 1999 ND 160, ¶ 15, 598 N.W.2d 799.  While the district court could have foreseen that Rush’s hearing would take more than three hours to conduct, the actual delay was done for good cause and did not affect Rush’s liberty interests.  

[¶19] Rush further argues the district court’s handling of the witnesses, and specifically their testifying out of order, violated his due process rights.  N.D.R.Ct. 6.3 provides that, “[u]nless otherwise ordered by the court, the parties shall proceed in the order in which they appear in the pleadings.”  Section 28-14-10, N.D.C.C., sets forth the order of trials by jury, specifically noting that, “unless the judge for special reasons directs otherwise,” the plaintiff’s case is to precede the defendant’s defense.  Here, then, the court did take the parties’ cases out of order when it had Dr. Sullivan temporarily step down to allow Dr. Riedel’s testimony.  However, the district court has wide discretion over the mode and order of presenting evidence.  
Nesvig v. Nesvig
, 2006 ND 66, ¶ 25, 712 N.W.2d 299; 
see also
 
Killmer v. Duchscherer
, 72 N.W.2d 650, 657 (N.D. 1955) (“The propriety of examination and cross-examination of witnesses and the order in which evidence is presented are matters largely within the sound discretion of the trial court.”).  Actions of the court regarding the mode and order of presenting evidence will not be disturbed by this Court absent an abuse of discretion.  
Killmer
, 72 N.W.2d at 657.  A district court abuses its discretion when it acts arbitrarily, unreasonably, or unconscionably, or when it misinterprets or misapplies the law.  
Filler v. Bragg
, 1997 ND 24, ¶ 9, 559 N.W.2d 225.  Here, the district court realized that, due to a scheduling error, its most prudent course was to interrupt the normal order of witnesses to allow Dr. Riedel the opportunity to testify in person, as he was due to return to Florida.  Therefore, the court had good reason to schedule the witnesses out of order, and did not act unreasonably when it did so.  Aside from inconvenience, Rush has not drawn our attention to any particular prejudice as a result of the court’s actions.  The court’s re-scheduling was for good cause and was not an abuse of discretion, no prejudice was shown, and thus was not reversible error.

V.

[¶20] We affirm the district court’s order committing Rush as a sexually dangerous individual.

[¶21] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom