2010 ND 98

**In the Matter of Christopher James MIDGETT.**

**State of North Dakota, Petitioner and Appellee**

v.

**Christopher James Midgett, Respondent and Appellant.**

**No. 20090253.**

Supreme Court of North Dakota.

June 10, 2010.

Dale Richard Rivard, Assistant State's Attorney, Grand Forks, N.D., for petitioner and appellee.

Troy Robert Morley, Grand Forks, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] Christopher Midgett appeals an amended order denying his petition for discharge from commitment as a sexually dangerous individual, claiming the district court erred in finding the State proved by clear and convincing evidence that he has serious difficulty controlling his behavior. We affirm.

I

[¶ 2] In March 2007, Midgett was civilly committed as a sexually dangerous individual, and this Court affirmed the district court's commitment order. *Matter of Midgett*, 2007 ND 198, ¶¶ 1, 14, 742 N.W.2d 803 (*Midgett I*). In February 2008, Midgett petitioned for discharge. Dr. Lynne Sullivan, a psychologist at the State Hospital, and Dr. Robert Riedel, an

independent psychologist, filed reports and testified before the district court. After the discharge hearing, the district court denied Midgett's petition, and he appealed. We concluded the district court failed to make sufficient findings of fact on whether Midgett has serious difficulty controlling his behavior, and we reversed and remanded for detailed findings on that issue. *Matter of Midgett*, 2009 ND 106, ¶¶ 9–10, 766 N.W.2d 717 (*Midgett II* ).

[¶ 3] On remand, the district court found Midgett remains a sexually dangerous individual who is likely to engage in further acts of sexually predatory conduct if released. The court found the State established by clear and convincing evidence that Midgett has serious difficulty controlling his behavior, stating, "Even in the structured setting of the North Dakota State Hospital, Dr. Sullivan indicated that Mr. Midgett has engaged in inappropriate impulsive behavior while awaiting entry into the sex offender treatment program. Until he completes that program and his behavioral impulses are re-assessed, it is simply unknown if he will have gained the ability to control his sexual urges in a non-restrictive community setting." On appeal, Midgett argues the district court erred in finding the State proved by clear and convincing evidence that he has serious difficulty controlling his behavior.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25–03.3–02. The appeal was timely under N.D.C.C. § 25–03.3–19. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25–03.3–19.

II

[¶ 5] Midgett argues the State did not prove by clear and convincing evidence that he has serious difficulty controlling his behavior.

[¶ 6] Civil commitments of sexually dangerous individuals are reviewed under a modified clearly erroneous standard of review. *Midgett II*, 2009 ND 106, ¶ 5, 766 N.W.2d 717. We will affirm a district court order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. *Id.*

[¶ 7] At a discharge hearing, the State has the burden of proving by clear and convincing evidence that the committed individual remains a sexually dangerous individual. *Matter of A.M.*, 2009 ND 104, ¶ 8, 766 N.W.2d 437. A sexually dangerous individual is:

> [A]n individual who is shown to have [1] engaged in sexually predatory conduct and who [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8).

[¶ 8] In addition to the three statutory requirements, to satisfy substantive due process the State must also prove the committed individual has serious difficulty controlling his behavior. *Midgett II*, 2009 ND 106, ¶ 6, 766 N.W.2d 717. In *Kansas v. Crane*, 534 U.S. 407, 412–13, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court held the State must prove a committed individual has serious difficulty controlling his or her behavior to sufficiently distinguish the dangerous sexual offender from typical recidivists and to prevent civil commitment from becoming a

mechanism for retribution or general deterrence.

[¶ 9] We have said:

[W]e construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case. We conclude that nexus between the requisite disorder and future dangerousness satisfies the due process requirements of *Crane.*

*Interest of J.M.,* 2006 ND 96, ¶ 10, 713 N.W.2d 518 (quoting *Matter of G.R.H.,* 2006 ND 56, ¶ 18, 711 N.W.2d 587). The substantive due process requirement is not a "fourth prong" of N.D.C.C. § 25–03.3–01(8), but is a part of the definition of a "sexually dangerous individual." *Matter of Vantreece,* 2009 ND 152, ¶ 6, 771 N.W.2d 585.

[¶ 10] In cases where lack of control is an issue, the United States Supreme Court has said:

"[I]nability to control behavior" will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Crane,* 534 U.S. at 413, 122 S.Ct. 867.

[¶ 11] In addition to the requirement that the State establish a nexus between the requisite disorder and dangerousness, "the district court must specifically state in its memorandum opinion the facts upon which its ultimate conclusion is based." *Matter of Rush,* 2009 ND 102, ¶ 10, 766 N.W.2d 720. In *Midgett II,* 2009 ND 106, ¶¶ 9–10, 766 N.W.2d 717, we concluded the district court failed to make sufficient findings about whether Midgett has serious difficulty controlling his behavior. We said, "The district court did not specifically state the facts upon which it relied or even make a finding on whether Midgett had serious difficulty in controlling his behavior. We conclude the district court did not comply with N.D.R.Civ.P. 52(a) and its findings are inadequate to permit appellate review." *Id.* at ¶ 9. We remanded for "detailed" findings on that issue. *Id.* at ¶ 10.

[¶ 12] On remand, the district court made the following detailed findings:

In addressing the issue as to whether or not Mr. Midgett has serious difficulty controlling his predatory behavior, the trial court has once again reviewed and reconsidered the testimony of Drs. Sullivan and Riedel during the August 20, 2008 hearing as well as considered the expert testimony presented during earlier hearings.

As noted in the trial court's September 16, 2008 Memorandum Decision and Order, Dr. Sullivan testified that the Respondent's continuing impulsivity while at the North Dakota State Hospital included an instance of engaging "in sexual contact with another resident in a secure placement in the community. He repeatedly went to places where he knew he was prohibited from going. That clearly shows failure to plan ahead because he knew he could potentially get

into trouble for that." (Tr. 11). "He demonstrates a lack of remorse by continuing to engage in high risk behavior with regards to children." (Tr. 11). [Dr. Sullivan] indicated further that a diagnosis of pedophilia and anti-social personality disorders are, according to the DSM, believed to be chronic and life-long disorders. "[In] Pedophilia, for example, the urges and fantasies associated with pedophilia are believed to not ever be able to go into complete remission or to go away completely. They are believed at best to be manageable, to be able to be controlled through therapy techniques." (Tr. 12). "Similarly, anti-social personality disorder is believed to be a chronic and life-long disorder, again fairly resistant to treatment. And because it is basically a complete way of looking at the world, interacting with the world, and these sorts of things are quite resistant to change. It's difficult to change that and so it's believed to be quite chronic and unremitting." (Tr. 12–13). Dr. Sullivan then also stated that it is possible for an individual with the right type of treatment to control their disorders. "That's the idea behind cognitive behavioral therapy is to change the thoughts and feelings associated with the world, the way the person sees the world and other people, and ideally there would be more adaptive ways of dealing with others and the world in general and then manage some of those thoughts and feelings." (Tr. 13). In addressing the risk for further acts of sexually predatory conduct, Dr. Sullivan related that the risk assessment tools she utilized supported her opinion that Mr. Midgett was likely to engage in future acts of sexually predatory conduct unless he successfully completes an intensive cognitive behavior sex offender treatment program that would lower his risk of re-offending. (Tr. 14–

19). She opined further that he could not successfully complete sex offender treatment until he completed a Basic Skills program. According to her testimony, that program is designed for "people that are not cognitively or behaviorally or intellectually ready to do the intensive cognitive or intellectual behavioral group format for sex offender treatment." (Tr. 20). Although Mr. Midgett is finally making progress in the Basic Skills program, Dr. Sullivan testified further that he is not yet at the point where he is engaged in "real hard core" sex offender treatment. (Tr. 23). In Dr. Sullivan's opinion, Mr. Midgett continues to meet the criteria for pedophilia and antisocial personality disorder and he still presents a risk of sexually predatory conduct in the community. (Tr. 25). She testified further that since he hasn't completed treatment needed to manage his sexual impulses, he is likely to engage in future acts of sexually predatory conduct if released at this time. (Tr. 26).

After re-evaluating all matters of record in this matter, including a re-assessment of the testimony presented by Drs. Sullivan and Riedel, the trial court reiterates its earlier findings and conclusions that the State has established by clear and convincing evidence that Respondent Christopher James Midgett remains a sexually dangerous individual as defined by N.D.Cent.Code § 25–03.3–01(8) who is likely to engage in further acts of sexually predatory conduct if released at this time. That likelihood is based upon diagnoses of pedophilia and an antisocial personality disorder that remain substantially untreated at this time. The court determines further that the State has established by clear and convincing evidence that, at this time, the Respondent has serious difficulty in

controlling his behavior. Even in the structured setting of the North Dakota State Hospital, Dr. Sullivan indicated that Mr. Midgett has engaged in inappropriate impulsive behavior while awaiting entry into the sex offender treatment program. Until he completes that program and his behavioral impulses are re-assessed, it is simply unknown if he will have gained the ability to control his sexual urges in a non-restrictive community setting.

[¶ 13] The district court made sufficiently detailed findings of fact that were supported by the record. In its amended order denying discharge, the district court stated that Dr. Sullivan testified Midgett has demonstrated impulsivity and failure to plan ahead while at the State Hospital. The district court stated that Dr. Sullivan testified Midgett's pedophilia and antisocial personality disorder are lifelong disorders that can be controlled with the right treatment, but that Midgett has not yet successfully completed treatment or even advanced beyond the Basic Skills, or pre-treatment, program. The district court stated that Dr. Sullivan testified the urges and fantasies associated with pedophilia are believed to never go into complete remission, but can be managed and controlled through therapy techniques. The district court, noting that Dr. Sullivan testified Midgett has engaged in inappropriate, impulsive behavior even in the structured setting of the North Dakota State Hospital, concluded the State established by clear and convincing evidence that Midgett has serious difficulty controlling his behavior.

[¶ 14] Under our modified clearly erroneous standard of review, clear and convincing evidence exists to support the district court's conclusion. In her annual reevaluation report, Dr. Sullivan stated Midgett is quite disruptive in treatment and sometimes skips classes. She reported Midgett had conflicts with several other residents during the year, and some of the conflicts appeared to be related to Midgett's belief "that he can do what he wants regardless of others' wishes and requests." Dr. Sullivan reported that Midgett has engaged in inappropriate behavior with staff members, such as putting his arm around a female staff member (touching hospital staff is prohibited) and rubbing himself on the nurses' desk while talking to a female staff member. Dr. Sullivan also stated in her report that Midgett was given a behavioral write-up for going into another resident's room and has engaged in horseplay and "staff shopping" (or going from staff member to staff member in hopes that one of them will give him his way). Dr. Sullivan reported Midgett "[e]ngages in impulsive behavior such as horseplay, violating rules, touching staff, and skipping treatment sessions." At the discharge hearing, Dr. Sullivan testified she believed Midgett would have serious difficulty controlling his behavior, because "he hasn't had the adequate treatment to manage his sexual impulses yet."

[¶ 15] The district court made sufficiently detailed findings that Midgett has serious difficulty controlling his behavior. Under an evidentiary standard that requires clear and convincing evidence, the record supports the district court's finding that Midgett has serious difficulty controlling his behavior.

### III

[¶ 16] We have considered the remaining issues and arguments Midgett raised and find them to be either unnecessary to our decision or without merit. The district court did not clearly err in finding the State proved by clear and convincing evidence that Midgett has serious difficulty

controlling his behavior. We affirm the order denying Midgett's motion for discharge.

[¶ 17] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 18] I respectfully dissent.

[¶ 19] In paragraph 12, the majority has quoted the district court's findings on remand. Those findings are inadequate and do not satisfy the statutory requirements for continued commitment, and I would reverse.

[¶ 20] The district court relies primarily on the assessment of Dr. Sullivan, but makes no attempt to show how the facts developed in Dr. Sullivan's report support its decision for continued commitment.

[¶ 21] The following is the entirety of the factual content of Dr. Sullivan's report of Midgett's behavior during the last year of confinement:

> The undersigned completed a comprehensive review of Mr. Midgett's chart over the past year. Below are several examples of behaviors and attitudes that exemplify his functioning in sex offender treatment; this is not exhaustive as there are many progress notes in his chart.
>
> Mr. Midgett started the year on the Pretreatment Stage (i.e., Stage 0) of the 6-stage sex offender treatment program at NDSH. His most recent treatment plan, dated 2/28/08, indicated that due to changes in the treatment program he will be going to a new group, Basic Skills II, which is still a pretreatment group.
>
> He is noted to be quite disruptive in group treatment, interrupting others and engaging in side-talk. He also tends to lose focus of the topic at hand when he is speaking. He has been redirected on these issues many times. In his Core group therapy, he has expressed concerns on multiple occasions that he does not understand the assignments, despite that he has often completed such assignments adequately. He has required much reassurance that group work is not graded and there are no right or wrong answers. He has tended to focus overly on others' issues, and failed to look at himself instead. Over the past year, Mr. Midgett has participated in Core group therapy, Cognitive Restructuring class, and Social Interaction class. However, toward the end of this review period, he started skipping Cognitive Restructuring with the excuse that he does not like it or understand it. He began refusing to sit with the Core treatment group during sessions. He has also come to treatment sessions on more than one occasion, stating that he will not talk during the session. He has stated in group that the reason he is here is because he violated probation, and his evaluations were based solely on his past. He completed a Financial Management class offered here at the hospital.
>
> Mr. Midgett has had conflicts with several other residents during this year. Some of these appear to be related to his belief that he can do what he wants regardless of others' wishes and requests. For example, on one occasion (7/15/07), Mr. Midgett was eating on one of the couches when another resident informed him that food was not allowed on the furniture. Mr. Midgett complied, but when the other resident walked away, he began eating again. The resident returned, and reminded him that food was not to be eaten on the couch. Mr. Midgett called the resident a bitch

and threw a packet of crackers at the resident. Staff were able to redirect the residents. He has also had conflicts with residents about his tendency to monopolize the television and turning up the volume. When asked to address this in treatment, he was unable or unwilling to identify any thoughts or feelings that led to watching TV, stating he sometimes "just does". This is the definition of impulsivity.

On 6/18/07, Mr. Midgett approached a female staff member, put his arm around her shoulder, and asked, "So are we going out tonight? How about you pick me up at 8 and we'll go to Applebee's." Residents are not permitted to touch staff, particularly female staff. The staff member informed Mr. Midgett his behavior was inappropriate, and he quickly apologized and walked away. On 7/30/07, he addressed in group that he rubbed himself on the nurses' desk when talking to a female staff member. He stated he would attend Sex Addicts Anonymous on the unit.

Mr. Midgett was given a behavioral write-up for going into another resident's room during the past year. He also called a staff member a "fat bastard" on two occasions. He has been argumentative with ward staff when he wants things. He has acknowledged that he engages in staff shopping (i.e., going from staff member to staff member in hopes that one of them will give him his way). He also acknowledged that he engages in horseplay, which is against the rules. When informed by the pharmacy that he had taken his "as needed" migraine medication too frequently, and thus he would not be allowed to use it for a couple of weeks, Mr. Midgett responded, "If I want to take Imitrex for my headaches I take them and no one will stop me."

[¶ 22] At a discharge hearing, the State has to prove by clear and convincing evidence that Midgett remains a sexually dangerous individual. *In re A.M.,* 2009 ND 104, ¶ 8, 766 N.W.2d 437.

[¶ 23] To satisfy substantive due process requirements, the State must establish a "causal relationship or nexus between the individual's disorder and dangerousness, which indicates the individual's mental disorder is linked to an inability to control behavior." *In re Rush,* 2009 ND 102, ¶ 9, 766 N.W.2d 720. " 'The importance of independent judicial decision-making means the judge, rather than the test scores or the psychologists who create them, is the ultimate decision-maker.' " *In re Vantreece,* 2009 ND 152, ¶ 12, 771 N.W.2d 585 (quoting *In re Hehn,* 2008 ND 36, ¶ 21, 745 N.W.2d 631). Based on that rationale, we have said "*Crane* and N.D.C.C. ch. 25–03.3 require proof of difficulty in controlling behavior by expert evidence in the record from which the district court, as the ultimate decision-maker, can conclude the individual has serious difficulty controlling his or her behavior." *Vantreece,* at ¶ 12. The court must state specific facts in its order to support its findings that the committed individual has serious difficulty controlling his behavior and remains a sexually dangerous individual. *Rush,* at ¶ 10. We cannot review a court's decision if the court does not provide any indication of the evidentiary basis for its decision because we do not know what evidence the court considered. *Id.* "Detailed findings, including credibility determinations and references to evidence the court relied on in making its decision, inform both the committed individual and this Court of the evidentiary basis for the district court's decision." *Id.*

[¶ 24] Here, the district court's findings about whether Midgett has serious difficulty controlling his behavior are sparse. Most of the court's findings were about Dr. Sullivan's testimony regarding Midgett's diagnosis of pedophilia and antisocial personality disorder and that he has not received sex offender treatment. However, diagnosis of antisocial personality disorder alone is not sufficient to establish a connection between the disorder and future dangerousness. *In re J.M.,* 2006 ND 96, ¶ 10, 713 N.W.2d 518. There must also be evidence clearly showing the disorder is likely to manifest itself in a serious difficulty controlling sexually predatory behavior. *Id.* The court's findings do not explain how Midgett's diagnosis distinguishes him from the typical recidivist and results in a serious difficulty controlling his behavior.

[¶ 25] The court found Dr. Sullivan testified about Midgett's continuing impulsivity while at the State Hospital, including sexual contact with another resident in a secure placement in the community and repeatedly going to places he was prohibited from going. Dr. Sullivan testified that these incidents occurred prior to Midgett's commitment at the State Hospital. The court's finding that this impulsive behavior occurred while Midgett has been at the State Hospital is not supported by the evidence.

[¶ 26] The court found the State established Midgett has serious difficulty controlling his behavior and has engaged in inappropriate and impulsive behavior at the State Hospital while awaiting entry into the sex offender treatment program. The court's findings are conclusory statements without any findings about specific instances of inappropriate and impulsive behavior to support these findings and it is not clear from the record what behavior the court relied on.

[¶ 27] The court does not have to find there was new sexually predatory conduct. *In re R.A.S.,* 2009 ND 101, ¶ 19, 766 N.W.2d 712. However, there must be some findings of instances of inappropriate or impulsive behavior or findings about expert testimony explicitly opining that the individual is unable to control his behavior to support the court's finding that the committed individual has serious difficulty controlling his behavior. *See Vantreece,* 2009 ND 152, ¶¶ 9–12, 771 N.W.2d 585 (inability to control behavior may be established by expert testimony explicitly opining the individual is unable to control his behavior); *Rush,* 2009 ND 102, ¶ 10, 766 N.W.2d 720 (the court must specifically state the facts its decision is based upon and make detailed findings, including credibility determination and references to evidence the court relied on in making its decision).

[¶ 28] The court also found it is "unknown" whether Midgett will be able to control his sexual urges until he completes the sex offender treatment program. This is not the standard for continuing commitment; rather, the State must present clear and convincing evidence Midgett is likely to engage in further acts of sexually predatory conduct and has serious difficulty controlling his behavior. *In re Midgett,* 2009 ND 106, ¶ 6, 766 N.W.2d 717 (*Midgett II* ).

[¶ 29] The district court failed to make sufficiently detailed findings about whether Midgett has serious difficulty controlling his behavior. The district court has not explained how the evidence offered at hearing or the information contained in Dr. Sullivan's report demonstrates this. Under an evidentiary standard that requires clear and convincing evidence, the record does not support the district court's conclusory finding that Midgett has serious difficulty controlling his behavior. On the record before the district court, the court's decision is not supported by clear

and convincing evidence, and I would reverse the court's order denying Midgett's motion for discharge.

[¶ 30]   CAROL RONNING KAPSNER